DANIEL STRINGER, PHILIP M. LINGER, NICHOLAS, MARGARET AND JOSEPH LINGER, PLAINTIFFS IN ERROR *vs.* THE LESSEE OF JOHN YOUNG, ARCHIBALD M'CALL, MARY CADWALLADER, WILLIAM REED AND ANNE HIS WIFE, AND HARRIET M'CALL.

On a trial in ejectment, the plaintiffs offered in evidence a number of entries of recent date, made by the defendants, within the bounds of the tract of land in dispute, designated as "Young's four thousand acres;" and attempted to prove, by a witness, that Young, when he made the entries, had heard of the plaintiffs' claim to the land. The defendants then offered to introduce as evidence, official copies of entries made by other and third persons since the date of the plaintiffs' grant; for the purpose of proving a general opinion, that the land contained in the plaintiffs' survey, made under the order of the court, after the commencement of the suit, were vacant at the date of such entries; and to disprove notice to him of the identity of plaintiffs' claim, when he made the entries under which he claimed. This evidence was unquestionably irrelevant. [337]

Entries made subsequent to the plaintiffs' claim, whatever might have been the impression under which they were made, could not possibly affect the title, held under a prior entry. [337]

The admission of evidence which was irrelevant, but which was not objected to, will not authorize the admission of other irrelevant evidence offered to rebut the same, when the same is objected to. [337]

The land law of Virginia directs that, within three months after a survey is made, the surveyor shall enter the plat and certificate thereof in a book, well bound, to be provided by the court of his county, at the county charge. After prescribing this, among other duties the law proceeds to enact, that any surveyor failing in the duties aforesaid, shall be liable to be indicted. The law, however, does not declare that the validity of such survey shall depend in any degree on its being recorded. [338]

The chief surveyor appoints deputies at his will; and no mode of appointment is prescribed. The survey made by his deputy is examined and adopted by himself, and is certified by himself, to the register of the land office. He recognizes the actual surveyor as his deputy in that particular transaction, and this, if it be unusual or irregular, cannot affect the grant. [340]

Objections which are properly overruled, when urged against a legal title, in support of an equity, dependent entirely on a survey of land for which a patent has been issued, can have no weight when urged against a patent regularly issued in all the forms of law. [340]

In Virginia, the patent is the completion of the title, and establishes the performance of every pre-requisite. No inquiry into the regularity of those preliminary measures, which ought to precede it, is made in a trial at law. No case has shown that it may be impeached at law, unless it be for fraud. Not legal and technical, but actual and positive fraud, in fact, committed by the person who obtained it; and even this is questioned. [340]

[Stringer et al. vs. Lessee of Young et al.]

It is admitted to have been indispensably necessary to the plaintiffs' action, to show a valid title to the land in controversy; and that the defendants were at liberty to resist the testimony, by any evidence tending in any degree to disprove this identity. But the defendants were not at liberty to offer evidence having no such tendency; but which might either effect a different purpose, or be wholly irrelevant. The question of its relevancy must be decided by the court; and any error in its judgment would be corrected by an appellate tribunal. The court cannot perceive that the omission of the surveyor to record the survey, or the fact that the survey was made by a person not a regular deputy, had any tendency to prove that the land described in the patent was not the land for which the suit was instituted. [342]

The warrant for the land in controversy was entered with the surveyor of Monongalia county on the 7th of April 1784. At the May session of that year, the general assembly of Virginia divided the county of Monongalia, and erected a new county, to take effect in July, by the name of Harrison. The land on which the plaintiffs' warrant was entered, laid in the new county. The certificate of survey is dated in December 1784, and in accordance with the entry, states the land to be in Monongalia.

The land law of Virginia enacts that warrants shall be lodged with the surveyor of the county in which the lands lie, and that the party shall direct the location specially and precisely. It also directs despatch in the survey of all lands entered in the office. No provision is made for the division of a county between the entry and the survey. The act establishing the county of Harrison, does not direct that the surveyor of Monongalia county shall furnish the surveyor of Harrison with copies of the entries of lands which lay in the new county, and with the warrants on which they were made. In this state of things the survey of the land in controversy was made by the surveyor of Monongalia; the plat and certificate on which the patent was afterwards issued, were transmitted to the land office, and the patent described the land as in Monongalia county. No change was made in the law until 1788. This will not annul the patent, or deprive the unoffending patentee of his property. [343]

The misnomer of a county, in a patent for land, will not vacate the patent. It will admit of explanation, and if explanation can be received, the patent on which the misnomer is found, is not absolutely void. [344]

ERROR to the district court of the western district of Virginia.

This was an ejectment brought by the defendants, against the plaintiffs in error, in the district court of the United States for the western district of Virginia, exercising circuit court powers, for the recovery of a tract of four thousand acres of land in the said district, being a tract lying in the north-east corner of a large connexion of surveys made together, owned by Reed and Ford, the said Youngs, Thomas Lardley, and others; some in one name and some in others, as appearing by the surveyor's diagram. There was

VOL. III.—2 Q

a verdict and judgment for the plaintiffs, which this writ of error is brought to reverse.

During the trial the counsel of the defendants tendered three bills of exceptions to opinions of the court, which are signed, sealed, and made part of the record, and which are substantially as follows:

The first bill of exceptions states that the plaintiffs below, on the trial of the case before the district court, introduced a grant for the lands claimed, which grant is described in the third bill of exceptions, and the plat and report of the surveyor made in the cause.

That the plaintiffs also offered in evidence a number of entries of recent date, made by the defendant Stringer, within the bounds of the said land, as designated on said report, as John Young's four thousand acres, being the land claimed by the plaintiffs, and attempted to prove by a witness that Stringer, when he made those entries, had heard of the plaintiffs' claim to the land in controversy. The defendants thereupon offered as evidence official copies of entries made by others and third persons, since the date of the plaintiffs' grant, for the purpose of proving a general opinion that the lands claimed were vacant at the date of the said entries, and to disprove notice to Stringer of the identity of the plaintiffs' claim, when he made the entries under which the defendants claim to hold. The court decided this evidence to be inadmissible, to which the defendants excepted.

The second bill of exceptions, after setting out the plaintiffs' grant, states: that the defendants then offered in evidence the surveyor's book, of Monongalia county, to prove no such survey had ever been returned to the office of said surveyor, and recorded in the books of the said surveyor; and further offered to introduce evidence to prove that Henry Fink, the deputy upon whose survey the grant purports to have issued, resided at the date of the said survey in Harrison county, and was not then a deputy surveyor of Monongalia county. The defendants offered the said evidence to prove that no survey had ever been made, and that the register issued the grant without proper authority; on which

[Stringer et al. vs. Lessee of Young et al.]

account the same was void. The plaintiffs objected to this evidence as inadmissible for the purpose stated; and the court rejected it as such. The defendants counsel then offered the same evidence to disprove the identity of the land contained in the plaintiffs grant with that now claimeu by the plaintiffs, and represented by the surveyor's report, as contained by the blue lines thereon, and thereon designated by the Roman numeral V. The court also rejected the said evidence for the last mentioned purpose, and the defendants excepted.

The third bill of exceptions states; that the plaintiffs on the trial of the cause introduced a grant in the words and figures following, setting it forth at large. The grant is issued to John Young, the lessor, and dated the 10th of June 1786, for four thousand acres, the premises in question; bounded as follows, to wit: describing it by metes and bounds.

The defendants thereupon offered in evidence a certified copy of an act of assembly of Virginia, establishing the county of Harrison, and a copy of the certificate of the survey on which the plaintiffs' said grant issued, dated December 13th 1824, after the act for erecting the county of Harrison was in operation; and proved that the land purporting to be granted, and the land claimed, as having been surveyed, lay in the bounds of the county of Harrison; and, upon this evidence the counsel moved the court to instruct the jury, that, if they were satisfied from the testimony that the lands lay in a different county from that in which the survey imports to have been made, then the grant was void at law; and that it was not competent for the plaintiffs to contradict the call for the county in the grant. But the court delivered its opinion that the foregoing facts, if true, should not avail the defendants in the present action, as the grant was not void: to which opinion the third bill of exceptions is taken.

The case was argued by Mr Smyth, for the plaintiffs in error, and by Mr Doddridge, for the defendants.

For the plaintiffs, on the first bill of exceptions, it was con-

tended; that the court admitted illegal evidence offered by the plaintiffs below, and stated in the bill, to go to the jury. That the court rejected evidence offered by the defendants below, which was proper to counteract the said evidence offered by the plaintiffs.

On the second bill of exceptions it was argued, that the evidence offered was legal, and should have been admitted to the jury.

On the third bill of exceptions, the counsel for the plaintiffs contended; that the court should have instructed the jury that the plaintiffs' grant was not evidence to support their claim to the land in controversy. That the court should have instructed the jury, that if they were satisfied, from the testimony, that the lands lay in a different county from that in which the survey purports to have been made, that the grant was void. That the court should have instructed the jury, that the plaintiffs could not, by parol evidence, contradict the call for the county in their grant. That the court erred in giving no instruction on that point, although required so to do by the defendants; and on the whole record, the plaintiffs in error contended, that this court should have decided that the grant under which the plaintiffs claimed was void. That the instruction of the judge to the jury, that it is no objection to the plaintiffs' grant that the survey was made by a surveyor of Monongalia, in the county of Harrison, is erroneous. That the court erred in admitting hearsay evidence to identify corners, and establish boundaries, of the lands claimed by the plaintiffs; and that the verdict is contrary to evidence; and therefore the court should have ordered a new trial.

Smyth, for the plaintiffs in error, argued; that the court admitted the plaintiff below to introduce illegal evidence, as stated in the first bill of exceptions.

They produced copies of a number of entries of recent date, made by Stringer, one of the defendants below, within the bounds described in the surveyor's report; and attempted to prove by a witness, that when those entries were made; the said Stringer had heard of the claim of the plaintiffs. This

[Stringer et al. vs. Lessee of Young et al.]

was an attempt to deprive an individual of the right to enter vacant land, because he has heard that another has a claim to it. Has there not been an attempt, sanctioned by the court, to lead the jury to believe that having heard that another had a claim to the land, the defendants had no right to locate it, although it might be vacant? Has there not been an attempt to lead the jury to believe that the law of purchaser with, or without notice, had some bearing on the cause? The doctrine of notice has no application to purchasers from the government. If the plaintiffs' grant gave no title, notice to Stringer would not make it good against him. Suppose that Stringer and some other person had made entries on the same day, Stringer having heard of Young's claim, the other not having heard of it; will it be contended that the one could, and the other could not, obtain a right? What had the plaintiffs to do with these entries of the defendants? They could not stand in the way of the claim of the plaintiffs, if they had a grant for the land. The tendency of this evidence, if not the object of producing it, was to perplex and mislead the jury, and excite a prejudice against the defendant Stringer. And the law is that "illegal or improper evidence, however unimportant it may be to the case, ought never to be confided to the jury; for if it should have an influence upon their minds, it will mislead them; and if it should have none, it is useless, and may at least produce perplexity." 2. Wash. 281.

The court erred in rejecting evidence offered by the defendants, which was proper to rebut the said evidence offered by the plaintiffs.

The illegality of Young's evidence, we admit: but as the court received it, thereupon it became necessary and proper to counteract it. Copies of entries, if evidence for the one party, were evidence for the other; and a general reputation that the land was vacant, was persuasive evidence that Stringer had no notice of Young's claim, and believed the land to be vacant. This evidence was important to remove prejudice; and refusing to receive it secured the effect of the plaintiffs' illegal evidence.

[Stringer et al. vs. Lessee of Young et al.]

The evidence stated in the second bill of exceptions should have been left to the jury.

The evidence offered was, the book of the surveyor of Monongalia; and testimony that Henry Fink, who made the survey, was not a deputy of the surveyor of Monongalia in December 1784, when the plaintiffs' survey was made. You cannot, in a court of law, go into the consideration of a deed; but you may avoid it, by proving fraud in the execution. If there was no survey, or only a survey by Henry Fink, as deputy surveyor of Monongalia, when in fact he was not so, the signature of the governor was obtained by fraud. There is fraud in the execution of the deed, which may be shown in a court of law; so this evidence should, for that purpose, have been permitted to go to the jury.

The plaintiffs below were to identify their land; their grant called for land in Monongalia, and their survey was made by Henry Fink, as deputy surveyor of Monongalia; the surveyor's book was offered to disprove the identity of the land; the judge refused to receive the book as evidence, no matter what it proved. It never was heard before that the survey was not evidence on the question of identity. And if the survey is evidence, the surveyor's book is evidence. The grant calls for a corner to the lands entered by George Jackson. The book might show where those lie. The book might prove that the survey began on the head of the Glady Fork of Stone Coal creek, and extended down it. The land claimed includes the right hand fork of Stone Coal, below the mouth of the Glady Fork, and does not include the mouth of the Glady Fork, which is a branch of the right hand fork. The grant does not say, as the survey does, "beginning at the head of the Glady Fork of Stone Coal creek." Hence the necessity of exhibiting the survey; because it contains evidence of the locality, not in the grant. If the surveyor's book was legal evidence, it should have been left to the jury, whether offered for one purpose or another; but it was rejected by the court.

On the question of identity, the copy of an entry is evidence. 5 Wheat. 359, 362.

[Stringer et al. *vs.* Lessee of Young et al.]

The court should have instructed the jury, that the plaintiffs' grant was not evidence to support their claim.

The defendants produced the act of assembly, which established Harrison county on the 20th of July, 1784; a copy of the plaintiffs' survey, dated December 13th 1784, signed Henry Fink, assistant to S. Hanway, S.M.C.; and proved that the lands in controversy lay in Harrison, at the date of the survey. The court instructed the jury, that if the facts were so, it could not avail the defendants in this action; and that the grant was not void. If we admit, for the sake of argument, that the grant is not void, it can take no lands elsewhere than in Monongalia. And however land in another county may seem to suit the description, they cannot be the granted lands. The grant is no evidence of title to lands in Lewis, a county formed from Harrison. The jury should have been instructed that the grant was no evidence of title to land which lay in Harrison at the date of the survey. The commonwealth has granted lands in Monongalia. If you cannot find them there, you can find them no where else. Can a grant for lands in the county of Brooke pass lands lying in the county of Princess Anne? A party must identify the land according to the call of his grant. If he calls for crossing James river, he must cross James river. Is not the call for the county the most important of all calls?

Should it be contended that the surveyor of Monongalia might survey, in Harrison, lands entered in Monongalia before Harrison county was formed, it is answered, this was never authorized: and in this act the sheriff of Monongalia is specially authorized to complete his business in Harrison; but no such authority is given to the surveyor.

The court should have instructed the jury that the plaintiffs could not by parol evidence contradict the call for the county in the grant under which they claim.

There is no latent ambiguity. In Dowlie's case, 3 Coke's Rep. 9, 10, the grant was held void because the parish was wrong named. But if parol evidence could have been offered to contradict the call for the name of the parish, the grant would have been made good. A grant in the county of S. will not pass what lies in the county of D. 3 Bac.

Abr. 389. But if parol evidence could have been received to contradict the call for the county, the grant would have been made good. A grant to one, as a knight, when he is an esquire, has been held void. But this would have been remedied, had parol evidence been admissible.

Parol evidence is admissible to vary or contradict the grant. 2 Cranch, 29. The name Hosmer in a grant, cannot be proved by parol to be Houseman. 12 Johns. 77. In the appendix to Pothier on Obligations, the law is thus laid down (Vol. 2, p. 210): "But where there is an existing subject, to which a description may be properly applied, parol evidence cannot be allowed that a different subject was intended." Here there is an existing subject, the county of Monongalia, to which the description, lying in the county of Monongalia, may be applied.

The court was asked to instruct the jury, "that it is not competent to the plaintiffs to contradict by parol the call for the county in his grant," and gave no instruction on that point. The court, when asked for an instruction, are bound to give the instruction asked for, or another on the same point. 2 Wash. 272, 273.

The court should have decided, that the grant under which the plaintiffs claimed, was void.

It is contended, that a grant is void if there is an insufficient or false description; or if it has been obtained on a false suggestion; or if it has been obtained by fraud; or if it has been obtained against the rules of the land office. And that in all these cases, if the objection appears on the face of the grant, or if it judicially appears, the grant is void in a court of law.

As to an insufficient or false description. If lands are described as lying in a wrong parish, the grant is void. Cited 3 Bac. Ab. 388. 2 Co. Rep. 10. 2 Mod. 3, 4. Anderson, 148. 4 Cruise, Dig. 225.

It is therefore contended; that this grant is void, for an insufficient and false description. And it always was within the jurisdiction of a court of law to declare, that for such a defect, a grant or any other deed of conveyance was void. See 14 Vin. Abr. 100. 2 Co. Rep. 33. Hobart, 171.

[Stringer et al. *vs.* Lessee of Young et al.]

It has been decided that to omit the name of the county will not vitiate the grant, if there is otherwise a sufficient description of the land. But to give the name of the county, and give it falsely, is a defect that never was excused. 5 Mumf. 520. Let us consider the consequences to which the false description in the grant in question would lead. One searches the records of Harrison, and the books of the commissioners of the revenue; he finds no notice of any such grant; he searches the office of the surveyor of Harrison and Monongalia; he finds no survey recorded.

Recording a deed in a wrong county is a fatal objection, when urged by a purchaser without notice. So, after the district of Zanesville was formed from that of Marietta, the lands in Zanesville district could not be purchased at the office of Marietta. If lands ought to be conveyed by a deed recorded in the proper county, so they ought to be granted in the proper county. 4 Wheat. 478, 479. 5 Cranch, 92. 1 Wash. C. C. Rep. 322.

Of the false suggestion. The commonwealth's grant issues on the suggestion of the grantee, and on evidence offered by him, true or false, that he has complied with the law. A grant on a false suggestion is void. The king being deceived, his grant is void. He should be truly informed. If the suggestion is false of the parties' knowledge, the grant is void. 5 Bac. Ab. 602. 10 Co. Rep. 112. 1 Co. Rep. 46, 52. Skinn. 656. 5 Co. 94, 113. Yelv. 48. "Lying in Monongalia," is the suggestion of the grantee, and it is false. The grant is notice to all men that the grantee does not claim lands in Harrison. The commonwealth is deceived, and every citizen is deceived who may see this grant, and locate the lands claimed in Harrison.

The king's grant can do no wrong; rather than do wrong, it is void; where it would do wrong, it is void. 1 Co. Rep. 44. Shep. Abr. 91. Here fees are due to the surveyor of Harrison county and the college. The grant is issued on a survey made by a man falsely pretending to be a deputy surveyor of Monongalia; the surveyor of Harrison is certainly defrauded.

The grant has been obtained by fraud. The register had

Vol. III.—2 R

no authority to issue a grant for lands in Harrison.   In this way all the vacant land in Harrison might have been surveyed as in Monongalia, and granted as in Monongalia, and thus the surveyor of Harrison be defrauded of his fees.   They are a part of the consideration; a portion of them is appropriated to the college.   The governor supposed that the surveyor's fees were paid.   The commonwealth is interested that her officers shall receive their dues, and that the college shall receive the fund appropriated for the support of education.   5 Wheat. 293, 303.   5 Mumf. 522.

A grant fraudulently obtained is void.   In the case of Huidekōōper's lessee *vs.* Burrus, judge Washington decided that a patent for land is only *prima facie* evidence of title; but if the previous steps for vesting a title be not performed, proof of such omission will defeat the same.   5 Harris & Johns. 223.   1 Wash. C. C. Rep. 109.   1 Harris & Johns. 370, 2 Harris & Johns. 456, 458.   1 Hen. & Mumf. 306, 307.

Perhaps it will be said that although the grant might have been repealed by petition in chancery, yet it is good in a court of law.   It is contended that the statutory provision of Virginia for repealing grants, does not affect the authority of the common law courts to declare grants void.   It is a new remedy in some cases; in others it is conclusive; in others it does not apply; and this is one of those latter cases.   There is no law by which this grant may be repealed: for he who would repeal a grant, must have a prior equitable claim.   We are taught that for every wrong there is a remedy; but there is no remedy for this wrong, unless a court of law may adjudge this grant void.   Might one have taken all the good lands in the county of Cabel by plats fabricated, purporting to have been made by the surveyor of Henrico, had them granted as lands lying in Henrico, sold them as lands lying in Henrico; and have the title adjudged good, because there was no prior equitable claimant to ask for a repeal of the grant?

The providing of a remedy by the repeal of patents, obtained regularly and without fraud, in favour of a prior equitable claimant, did not take away the power of courts of law to adjudge grants void for insufficiency or fraud.   The

English courts of law declare grants and other deeds void, on trials of writs of right and ejectments. Virginia has adopted the common law of England. Where is the act of assembly that takes this power from her common law courts?

The law which avoids a grant, is the same in Virginia as in England. Judge Blackstone says, a patent is void in a court of law, if the cause appears on its face. 2 Blacks. 348. Judge Roane says the same thing. 1 Mumf. 141. Is it required that the falsehood and the truth shall both appear on the face of the grant? Certainly no. The falsehood appears on the face of the grant; the truth appears by the evidence in the cause; and then the grant is adjudged void. In this case the truth appears by the record, and that which avoids the grant, appears on its face. It calls for lands in Monongalia. If the land claimed is identified in Harrison, that circumstance renders the grant void; for on its face, it appears that the land was surveyed after Harrison became a county.

When it appears judicially that the king is deceived, his grant is void. Skin. 659. 6 Mumf. 120.

It is not necessary to repeal a grant, unless that grant, unrepealed, confers a title: but this grant confers no title to land in Harrison, therefore it is unnecessary to repeal it.

With regard to deeds, a distinction has been taken, that you cannot, in a court of law, invalidate them by proving a fraud in the consideration; but that you may prove a fraud in the execution. Here we say the execution was obtained by fraud. The governor was, by falsehood, induced to execute the grant. Would he have signed it had he been truly informed? Certainly not.

It has been decided in Virginia, in a similar case, that a grant might be declared void in a court of law; and that decision has never been declared not to be law. Hambledon vs. Wells.

Mr Doddridge, for the defendant in error. The matters alleged in the first bill of exceptions are wholly unimportant. The testimony offered and rejected, was not receivable for any purpose. The plaintiffs stood on the oldest grant, or the only grant appearing in the cause; and in such a case, besides

the formalities affirmed by the common rule, the only ques-
tion between the parties was that of identity, and neither
for this nor for any other purpose were they permitted to
look behind the grant. This will hereafter be proved, when
considering the questions raised by the second and third bills
of exceptions. The evidence offered and given by the plain-
tiffs, except the grant and surveyor's report, was unnecessary.;
as he had nothing to do with the conscience of Stringer,
perhaps, it might be admitted that this testimony was im-
proper; yet it was not objected to. But the testimony offered
by the defendants and rejected, was improper in every view.
It was offered to prove a general belief that the bond was
vacant; a fact which, if admitted, could avail them nothing.

The questions raised by the second bill of exceptions are:

1. Whether a defendant, when a legal grant for the land
claimed, and the official survey on which it is founded, are
given in evidence against him, can avoid the grant, by show-
ing, by the book of surveys, that the survey was not recorded;
and by parol proof that the deputy was not the deputy of
the surveyor certifying the plat, but of another surveyor?

2. Whether the defendant can offer the same evidence to
disprove the identity of the land?

The question raised by the third bill of exceptions was
this. The official plot and certificate of survey is dated the
13th of December 1784; and the plaintiffs' grant thereon the
10th June 1786. The county of Harrison was created the
3d of May 1784. The law commenced in force the 20th of
July 1784. So that when the survey bears date, the county
of Harrison was in being, and the land in fact was, in that
county; and the question is, ought the court to have instructed
the jury that, if they found these facts, the grant was void at
law, and that the plaintiffs could not disprove the descriptive
call, " Monongalia county," in the survey and the grant?

The questions raised by the second and third bills of ex-
ceptions may be considered together.

1. The first position is, that the parties can go behind
the grant for nothing in an action at law, because evidence
before the grant would take the party by surprize; and be-
cause, the grant is, ipso facto, an appropriation, and the

question to be determined is the identity of the thing granted. Again; in the case of a land office warrant, in Virginia, the entry is, and the survey is not, an inceptive appropriation. The title is transferred by the grant, towards obtaining which the survey is but a progressive step. Even the entry cannot be brought before the court. Wilson *vs.* Mason, 1 Cranch, 45, 101. Johnston *vs.* Brown, 3 Call, 359, 268. M'Arthur *vs.* Browder, 4 Wheat. 488, 491. Finley *vs.* Williams, 9 Cranch, 164, 167.

In the case of a military warrant under the colonial government, it was otherwise. There was no entry, and of course, the survey was an inceptive act of appropriation. Taylor *vs.* Brown, 5 Cranch, 234, 241.

It follows that the warrant in the latter case, without any other act, conferred on the surveyor an authority to survey; whereas, under the land law of Virginia, of May session 1779, ch. 13, the warrant must be lodged with the surveyor, and the party must make an entry on the land he selects. This entry, alone, confers on the surveyor the authority to survey; and his certificate of survey proves as well that the possession of the warrants were necessary, as the entry under which he surveys; as under the military warrant it proved the possession of the war— t. That is, it proves the existence of the authority by which it was made. Taylor *vs.* Brown. 5 Cranch, 234, 241.

2. The whole duty of a surveyor, in relation to a survey and recording it, is prescribed by the act of 1779, ch. 13. 10 Hen. S. L. page 57.

These duties are again prescribed in 1784, by an act reducing into one the several acts concerning surveyors; 10 Hen. S. L. page 352: but by the latter act these duties are not varied. These laws require the surveyor to run, and plainly mark and bound the survey, except where the same is bounded by water courses, the lines of surveys before made. They require him, in his certificate, to note the boundaries, courses, and distances, variation from the true meridian, and to set down *the names of adjoining owners*, and of the hundreds, where any are established; and to observe a due proportion between length and breadth. The

law does not *expressly* require the county to be named, but it is admitted that it does so *impliedly*.

Yet, as a survey is a progressive step, and those duties merely directory, it has been holden that the name of the owner of the survey itself may be mistaken in the certificate and grant, and both contradicted by parol testimony; as where the survey imported to be made for one Vinegard, it was allowed to be proved that, in fact, it was made for one Unrod. Johnston *vs*. Buffington, 1 Wash. 116.

That the duties imposed on the surveyor are directory, and the omission to perform them does not affect the right of the party, is settled by this court in Craig *vs*. Radford, 3 Wheat. 594, and several other cases.

3. The name of the county is matter of general description, and although a surveyor ought to state it truly, yet if he does not, the name of the county may as well be corrected by evidence as the name of the owner. If he misstate it, he fails in his duty; but this shall not injure the party.

In a grant, a description that will identify the land is all that is necessary. M'Arthur *vs*. Browder, before quoted. If even a location have certain material calls sufficient to support it, and to describe the lands, other calls less material and incompatible with the essential calls may be disregarded. Taylor *vs*. Brown, 5 Cranch, 234, 241. Now, water courses are natural, material, permanent and essential calls; while the lines of a county are immaterial and artificial ones.

4. The omission of the name of the county does not vitiate a grant, which proves this description immaterial. M'Lean *vs*. Tomlinson, 5 Mumf. 220, 223.

The patent in that case, on its face, purports to have issued on a certificate of survey, bearing date the 14th of July 1773; on warrants of a subsequent date in that and the next year, and the name of the county is left blank. The court decided the omission to be immaterial, the patent containing other sufficient descriptions, as " at the round bottom" " on the Ohio," &c. &c.

The history of that title is as follows: general Washington procured a deputy surveyor of West Augusta to make a pri-

[Stringer et al. *vs.* Lessee of Young et al.]

vate survey for him in 1773. He possessed the filed notes, and afterwards purchased warrants to cover it of a date subsequent to his private survey. In October 1776, the counties of Monongalia, Ohio and Yohogania, were formed out of West Augusta. See Hen. S. L. Vol 9, 262, 269. The law creating these counties took effect the 8th of November 1777; 263. After this period, the surveyor of West Augusta ceased to be surveyor of either of those counties; yet on these private field notes, and of the acquired warrants, he returned a plat and certificate of survey; but not knowing into which of those new counties the land fell, he left the name blank.

Here the survey was made without any authority whatever; the special verdict having found the true date of the survey and warrants, and all this appearing on the face of the grant; and yet it was sustained as valid at law.

5. But if it were granted that the surveyors book of surveys could be produced for any purpose, it would follow of course, and, *a fortiori*, that the book of entries could also be produced; which would be contrary to the decisions of this court, and of the courts of Kentucky. If parties in another county were supposed to be ready to do this, then the real fact would appear, that the entries were made in Monongalia, while Harrison was part of that county, and remained unsurveyed at the time of the separation.

The date of the entry does not appear from the patent, and the true date of the survey does not appear in the case otherwise than by the certificate. This date should be controlled by the certificate that the lands are in Monongalia county, which they could not be at the date of the certificate. Or if the court would not sustain the position, then this court have already decided that the official certificate of a survey proves the authority by which the same was made, and therefore proves a good and valid entry made in Monongalia before the separation of the counties, and at that time remaining unsurveyed.

If it is contended that this entry ought to have been certified to the surveyor of the new county, the law on the subject is misunderstood. Prior to the act of October session,

17th, ch. 51, there was no provision for so certifying an entry. See 12 Hen. S. L. 709. The preamble puts the matter beyond dispute.

An unsurveyed entry remains subject to forfeiture if not surveyed in time, and all the duties and responsibilities attached to that surveyor with whom the entry was made. Should he have stated the lands to have been in Harrison county at the time of survey? If so, he has made a mistake. Ought he to have recorded the survey, and did he fail to do so? Then he has, in both cases, failed in the discharge of a directory duty, merely; by which the right of the party is not impaired.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

This was an ejectment brought in the court of the United States for the western district of Virginia. The jury found a verdict for the plaintiffs, on which the judgment of the court was rendered; which judgment has been brought to this court by writ of error. At the trial, three bills of exception were taken to opinions given by the court to the jury, and the cause depends on the correctness of these opinions. The first bill of exceptions is in substance; the plaintiffs at the trial of this cause produced a grant, (setting it forth in words and figures therein.) This grant is issued to John Young, dated the 10th of June 1786, for four thousand acres, bounded as follows: Beginning at a black oak corner to land entered by George Jackson, and running thence N. 3° W. 1001 poles, crossing waters of Stone Coal creek to a beech, thence N 80° E 641 poles, crossing a branch of said creek to a white oak S. 3° E. 1001 poles, by lands surveyed for Thomas Laidley, to a white oak, and thence S. 80° W. 660 poles, crossing waters by lands of said waters to the beginning. Also the plat and report of the surveyor, Thomas Haymond, made in this cause, in pursuance of an order, &c. The plaintiff also offered in evidence a number of entries of recent date, made by the defendant Stringer within the bounds of the tract of land designated on said report as John Young's four thousand acres, being the land claimed by the plaintiffs; and attempted to prove by a witness, that Young, when

he made said entries, had heard of the plaintiffs' claim to the land in controversy. The defendants thereupon offered to introduce as evidence, official copies of entries made by other and third persons, since the date of the plaintiffs' grant, for the purpose of proving a general opinion that the lands contained in the report and diagram of the surveyor, made in this cause, were vacant at the date of such entries, and to disprove notice to Stringer of the identity of the plaintiffs' claim when he made the entries under which the defendants claim; but the court declared its opinion to be that the said evidence was inadmissible, and rejected the same.

The testimony offered by the defendants was unquestionably irrelevant. Entries made subsequent to the plaintiffs' grant, whatever might be the impression under which they were made, could not possibly affect the title, and were therefore clearly inadmissible. This principle has never been controverted; but the plaintiffs in error insist that they had a right to introduce this testimony, in order to rebut other equally irrelevant testimony which had been offered by the plaintiffs in ejectment. This testimony was the recent entries made by Stringer, and the witness who proved that at the time of making them, he had no notice of the plaintiffs' claim. This testimony was undoubtedly irrelevant, and had it been opposed, could not have been properly admitted. Had the defendant moved the court to instruct the jury that it must be utterly disregarded, that it must not be considered by them as testimony, and this instruction had been refused, the refusal to give it would have been error. The defendant, however, has not taken this course; but has chosen ro repel the testimony by other evidence, which was clearly inadmissible. Whether a case may exist in which improper testimony may be calculated to make such an impression on the jury that no instruction given by the judge can efface it, and whether in such a case testimony not otherwise admissible may be introduced, which is strictly and directly calculated to disprove it, are questions on which this court does not mean to indicate any opinion. It is unnecessary, because the testimony rejected by the court is not of this character. En-

tries made subsequent to the plaintiffs' grant by others, can have no tendency to disprove the evidence of notice by the defendant when his entries were made.

The second bill of exceptions is in these words. Upon the trial of this cause, the plaintiffs, in support of the issue on their part, introduced a grant to the lessor of the plaintiffs in the words and figures following: "Patrick Henry, &c." The defendants thereupon offered to introduce the surveyor's book of Monongalia county, to prove no such survey had ever been returned to the office of said surveyor, and recorded in the book of said office; and further, offered to introduce evidence that Henry Fink, the deputy upon whose survey said grant purports to have issued, resided at the date of the said survey in Harrison county, and was not a deputy surveyor of Monongalia county. The defendants offered said evidence to prove the said grant issued without any survey having been made, and that the register of the land office issued said grant without proper authority, and that the same was therefore void. To the giving of which evidence the plaintiffs, by their counsel, objected, and the court declared its opinion to be, that such evidence could not be given for the purposes aforesaid, and rejected the same. Whereupon the defendants, by their counsel, offered the same evidence to disprove the identity of the land contained in the plaintiffs' grant with that now claimed by the plaintiffs, and represented by the figure in the said surveyor's report. But the court declared its opinion to be, that the said evidence ought not to be received for the last mentioned purpose.

In rejecting this testimony, the court decided that the non appearance of the survey on which the grant of the plaintiffs had been issued on the book of the surveyor of Monongalia county, where it ought to have been recorded; and the fact that the person who made the survey was not at the time a deputy surveyor of Monongalia county, could not avoid the patent; and that the evidence of those facts was consequently inadmissible.

The land law of Virginia directs that within three months after a survey is made, the surveyor shall enter the plat and

certificate thereof in a book, well bound, to be provided by the court of his county, at the county charge. After prescribing this among other duties, the law proceeds to enact, that any surveyor failing in any of the duties aforesaid, shall be liable to be indicted, &c. The law, however, does not declare that the validity of such survey shall depend in any degree on its being recorded.

The act also directs, that the surveyor "shall, as soon as it can conveniently be done, and within three months at the farthest after making the survey, deliver to his employer or his order, a fair and true plat and certificate of such survey," &c. This plat and certificate is to be returned into the land office within twelve months at farthest. It may be returned immediately, and consequently may be returned to the land office before the expiration of the three months allowed to the surveyor for recording it in his book. This plat and certificate of survey is an authority to the register to issue a patent.

The surveyor undoubtedly neglects his duty, if he fails to record the plat and certificate of survey, and is punishable for this neglect; but the act furnishes no foundation for the opinion that the validity of the survey or of the patent is in any degree affected by it.

This point occurred in the case of Taylor *vs.* Brown, 2 Cranch, 234. That was a suit in chancery, brought by a junior patentee to establish an elder equitable title against the elder patent. Both claimed under old military surveys, made in virtue of military warrants, granted for services under the regal government, an entry of which with the surveyor was not required by law; consequently the survey was the foundation of a title to be asserted in a court of equity, against a title which was valid at law. The omission of any circumstance affecting his title was not, as in this case, cured by the patent.

In answer to the objection that the survey was not recorded within the time prescribed by the act of 1748, which contains a similar provision to that which is found in the present land law, the court said " this section is merely directory to the surveyor. It does not make the validity of the survey

dependent on its being recorded, nor does it give the proprietor any right to control the conduct of the surveyor in this respect. His title, where it can commence without an entry, begins with the survey; and it would be unreasonable to deprive him of that title, by the subsequent neglect of an officer not appointed by himself, in not performing an act which the law does not pronounce necessary to his title, the performance of which he has not the means of coercing." We adhere to this opinion.

The circumstance that Fink, who is stated not to have resided at the time in Monongalia, nor to have been a deputy surveyor of that county, has also been considered as vitiating the patent.

The chief surveyor appoints deputies at his will, and no mode of appointment is prescribed. The survey made by his deputy is examined and adopted by himself, and is certified by himself to the register of the land office. He recognizes the actual surveyor as his deputy, in that particular transaction; and this, if it be unusual or irregular, cannot effect the grant. This point also appears to have been substantially decided in the case of Taylor *vs.* Brown. In that case Taylor's survey was made by Hancock Taylor, who was killed by Indians, so that he never returned the plat and certificate of survey to William Preston, the principal surveyor, as was required by law. His field notes, however, were brought to the principal surveyor, who made out a plat and certificate of survey from them. To the objection that the plat and certificate not having been returned to the office, the survey was not completed, the court answered, " this survey then is in law language made by William Preston. It is confirmed as a survey made by him. The law recognizes it as his survey. Assuredly then his certificate may authenticate it."

It cannot escape observation, that if these objections were properly overruled when urged in support of the legal title, against an equity dependent entirely on the survey; they can have no weight when urged against the validity of a patent which has been regularly issued in all the forms of law.

In Virginia, the patent is the completion of title, and esta-

[Stringer et al. *vs.* Lessee of Young et al.]

blishes the performance of every pre-requisite. No inquiry into the regularity of those preliminary measures which ought to precede it, is made in a trial at law. No case has shown that it may be impeached at law, unless it be for fraud; not legal and technical, but actual and positive, fraud in fact, committed by the person who obtained it; and even this is questioned.

In Hambledon et al. *vs.* Wells, reported in a note in 1 Hen. & Mumf. 307, the defendants in ejectment in the district court offered evidence to prove that the grant under which the lessor claimed, was defective in several pre-requisites to a patent. The court of appeals overruled these objections; but determined " that the district court erred in not permitting the appellants to give evidence that the appellee procured the plat on which the patent was obtained to be returned to the office, knowing that an actual survey had not been made." In this case the objectionable act was a fraud knowingly committed by the patentee himself. Even this case has been questioned; though not, as far as is known, expressly overruled.

In Witherington *vs.* M'Donald, 1 Hen. & Mumf. 306, the defendant in ejectment offered evidence to show that the survey upon which the plaintiff's patent was founded was illegal; and also that the patent was obtained upon a certificate signed by Charles Lewis, as clerk of the land office, instead of being signed by the register or his deputy, as is required by law. The defendant excepted to the opinion of the court rejecting this testimony, and appealed to the court of appeals. The judgment was unanimously affirmed in that court. In the course of the trial, the case of Hambledon *vs.* Wells was mentioned by several of the judges with disapprobation; and it was said, that a single case decided by three judges against two, was not considered as conclusively settling the law.

The case of Hoofnagle *vs.* Anderson, 7 Wheat. 212, was a suit in chancery, brought to obtain a conveyance for a tract of land in the Virginia military reserve, in the state of Ohio, for which Anderson had obtained a patent. After its emanation, the plaintiff had located a military land warrant

on the same land, issued for services performed by an officer in the Virginia line, on continental establishment. The services performed by the officer on whose warrant Anderson's patent had been issued, were in the state line; though the warrant was expressed, by mistake, to be for services in the continental line. This court said, "It is not doubted that a patent appropriates the land. Any defects in the preliminary steps which are required by law, are cured by the patent. It is a title from its date, and has always been held conclusive against all whose rights did not commence previous to its emanation."

After the rejection of this testimony, when offered to defeat the patent, it was offered for the purpose of disproving that the land contained in the patent was the same land claimed in the suit. The court rejected it when offered for this purpose also.

It is admitted to have been indispensably necessary to the plaintiffs' action, to show a valid title to the land in controversy; and that the defendants were at liberty to meet this testimony by any evidence tending in any degree to disprove this identity. But the defendants were not at liberty to offer evidence having no such tendency, but which might either effect a different purpose, or be wholly irrelevant. The question of its relevancy must be decided by the court; and any error in its judgment would be corrected by an appellate tribunal.

Now this court cannot perceive that the omission of the surveyor to record the survey, or the fact that the survey was made by a person not a regular deputy, had any tendency to prove that the land described in the patent was not the land for which the suit was instituted.

The third exception stated that the plaintiffs had offered in evidence a grant as set forth in the second bill of exceptions, &c. The defendants thereupon offered in evidence a certified copy of an act of the assembly of Virginia, establishing the county of Harrison in the words and figures following: "An act for dividing, &c." and a copy of the certificate of survey on which said grant issued, in the words and figures following: "December 13th 1784, &c." and proved

[Stringer et al. vs. Lessee of Young et al.]

that the land purported to be granted, and the land claimed as having been surveyed, lay in the bounds of the county of Harrison, established as aforesaid; and therefore the defendants moved to instruct the jury, that if they are satisfied, from the testimony, that the land lay in a different county from that in which the survey purports to have been made, that the grant was void; and that it was not competent for the plaintiffs to contradict the call for the county in the patent and survey; but the court then and there declared its opinion to the jury, that if even the facts aforesaid were true, they could not avail the defendants in the present action, and that the grant under these circumstances would not be void.

The warrant was entered for the land in controversy with the surveyor of Monongalia county on the 7th of April 1784. At the May session of that year the general assembly divided the county of Monongalia, and created a new county, to take effect in July, by the name of Harrison. The land on which Young's warrant was entered lay in the new county. The certificate of survey is dated in December 1784, and, in accordance with the entry, states the land to lay in Monongalia. The grant conforms with the certificate.

The land law of Virginia enacts that warrants shall be lodged with the surveyor of the county in which the lands lie, and that the party shall direct the location thereof specially and precisely. It also enacts, that "every chief surveyor shall proceed with all practicable dispatch to survey all lands entered for in his office." No provision is made for the division of a county between the entry and survey. The act establishing the county of Harrison, does not direct that the surveyor of the county of Monongalia shall furnish the surveyor of the new county with copies of the entries of lands lying in Harrison, and with the warrants on which they were made. In this state of things the survey was made under the authority of the surveyor of Monongalia, and the plat and certificate on which the patent afterwards issued were transmitted to the land office. It was not till the year 1788 that the legislature passed an act on this subject, which directs that when any county shall be thereafter divided, the

surveyor of the new county shall be furnished with copies of the entries of all the surveyed lands lying in his county.

If in this uncertain state of the law, the surveyor of Monongalia county has surveyed an entry properly made in his office, for land which by a subsequent division of the county falls into Harrison, and has made his certificate as if the county still remained undivided; ought this error, if it be an error of the officer, to annul the patent, and deprive the unoffending patentee of his property?

The counsel for the plaintiffs in error has produced several cases to show that a mistake of this character in a royal grant, or any misinformation to the officers of the crown, will vitiate the instrument. We are not sure that grants which may be supposed to proceed from royal munificence, are to be placed precisely on the same footing with grants which are the completion of a contract of sale, every preliminary step in which is taken by officers appointed for the purpose by government, who act without the control of the purchaser. After making his location, he may show the land located, but has nothing to do with the authority of the surveyor, or the language in which he may make out his plat and certificate of survey. In this case there could have been no imposition attempted on the government by the purchaser. The mistake is accounted for, and there can be no imputation on the intrinsic fairness of the transaction. The misnomer of the county might take place, as has been suggested at the bar, in a case in which all the proceedings were perfectly regular. Had the survey been made the day before the law dividing the county of Monongalia took effect, the plat and certificate of the surveyor must have stated the land to be in Monongalia. The patent could not have issued until six months afterwards, and must have stated the lands to lie in Monongalia; although at the time of its emanation they would in fact lie in Harrison. To say in such a case that the misnomer of the county could avoid the patent, would shock every sense of justice and of law too much to be maintained. This misnomer of the county then must admit of explanation; and if explanation can be received, the patent is not absolutely void.

[Stringer et al. *vs.* Lessee of Young et al.]

The circumstances on which the motion to reject the grant was made, might be very proper for the consideration of the jury, on the question whether it comprehended the land in controversy ; but do not, we think, destroy its validity.

A vast deal of testimony, of which the court can take no notice, is crowded into this record.   The bills of exceptions taken to the opinions of the district judge present the only points which we are at liberty to consider.   In those opinions there is, we think, no error.   The judgment is affirmed, with costs.

This cause came on to be heard on the transcript of the record from the district court of the United States for the district of West Virginia, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said district court in this cause be, and the same is hereby affirmed with costs.