Arnold *v.* Grimes.

## ARNOLD *v.* GRIMES.

As a general rule, courts of law and of chancery have concurrent jurisdiction in matters of fraud. Still in many cases chancery will afford relief against fraud, which cannot be remedied at law.

At law fraud must be proved; in equity it may be presumed.

A patent for land from the United States, cannot generally be impeached at law for fraud.

If fraud appears upon the face of a patent, it is rendered void at law; but when fraud or other defect arises dehors the grant, it is voidable only by suit in chancery.

A pre-emption certificate not evidence of legal title.

If a patent is void upon its face, or was issued without authority, or if the state had no title, it may be collaterally impeached at law; but for the determination of all other defects, resort should be had to a court of equity.

### *Error to Des Moines District Court.*

*Opinion by* KINNEY, J. This was an action of right brought by Grimes against Arnold, to recover the north east quarter of section thirty-six in township seventy, north of range three west.

A bill of exceptions was taken on the trial by Arnold, from which it appears that Grimes gave in evidence a patent from the United States dated in 1836, to W. W. Chapman for the land described in the declaration and also a deed from Chapman to him; this with proof of Arnold's possession, constituted the testimony on the part of the defendant in error.

Arnold then in defence offered the record of a petition in chancery with a decree of the district court of Des Moines county, and a decree of affirmance by the supreme court of Iowa, in a case in which Arnold was the complainant and said Chapman and Grimes were defendants. This evidence was not admitted. In order to a proper understanding of the character, bearing and relevancy of the evidence proposed, it becomes necessary to examine the petition and decrees, with which Arnold sought to defeat the fee simple title established in Grimes by patent to Chap-

man, and by deed from Chapman to him.   It seems that Arnold on the 15th day of November, 1841, filed his bill in the district court of Des Moines county, making Chapman defendant, setting out among other things, that he settled upon the land (now in controversy,) in 1835.   That he occupied it until 1839, when he applied to the proper land officers for a pre-emption under the act of Congress, approved June 22, 1838, entitled "an act to grant pre-emption rights to settlers on the public lands."   That Chapman was present at the time an examination was made into his right to a pre-emption, and cross examined the witnesses. That after a hearing of the whole testimony, the land officers decided that Arnold was entitled to a pre-emption, and accordingly issued to him a receiver's receipt upon his paying the purchase money.   From this decision, the land officers awarding the pre-emption to Arnold, Chapman appealed to the commissioner of the general land office. The complainant Arnold then sets out that during the summer and fall of 1839, after the appeal of Chapman, that Chapman made alarming and repeated threats, that unless complainant would convey to him a portion of the land so pre-empted by complainant, that he, Chapman, would take complainant's life, and that under fear and duress, &c., complainant and Chapman arranged their difficulties by Arnold's conveying to Chapman twenty-seven acres of the land, and Chapman conveying to Arnold forty acres of other land.   The bill charges in the most emphatic manner, that this conveyance was extorted from Arnold the complainant by Chapman, by reason of duress, fraud and fear of personal violence.   The bill then sets out, that complainant again in the summer of 1840, applied for a pre-emption to the same tract of land under the act of Congress, approved June 1, 1840, entitled "an act supplemental to an act entitled an act to grant pre-emption rights to settlers on the public lands, approved June 22, 1838." That Chapman was notified of his intention to make the application, and that on the 10th of October, 1840, the land officers proceeded to hear the testimony, and decided

Arnold v. Grimes.

that complainant was entitled to a pre-emption upon the said tract of land. A receiver's receipt of that date was accordingly issued to him, Chapman not being present. It is then charged in the bill, that Chapman afterwards notified the commissioner of the general land office that he protested against Arnold's pre-emption, and that to set it aside he forwarded to the secretary of the treasury of the United States the deed from Arnold to Chapman for a part of the same land, as conflicting with the oath taken by complainant. That the secretary of the treasury set aside this last entry of Arnold's and retained the two hundred dollars paid as purchase money.

The bill after reciting and charging various acts of fraud and duress on the part of Chapman, in procuring the deed to a portion of said land for the *purpose* of *using* it to defeat the complainant in his pre-emption right, prays for a cancellation of the deed from Arnold to Chapman upon the ground of such duress and fraud.

Grimes having been made party, the cause was tried upon the original and supplemental bill, exhibits, answer and evidence, whereupon the court found the bill and exhibits true, and decreed a cancellation of the deed from Arnold to Chapman, conveying the twenty-seven acres mentioned in the bill of Arnold, and that said Chapman or said Grimes, if in his possession, should deliver up said deed to be cancelled. This decree was affirmed by the supreme court as set out in the bill of exceptions.

The defendant below, Arnold, also offered to prove in connection with said record, that the deed referred to in said record, and cancelled by said decree, was the deed used by Chapman to set aside his pre-emption and entry of said land, and that aside from that deed so set aside by the decree, Arnold's entry was in all respects regular. Defendant also gave in evidence the original certificate of his pre-emption purchase as set forth in the record. The plaintiff below objected to said record being admitted to the jury, and the court sustained the objection, and ruled that the record and parole evidence should not be given to

the jury. To the ruling of the court excluding this evidence, the defendant excepted, and assigns the same for error.

It was urged in the argument of this cause by the counsel for the plaintiff in error: *First,* That courts of law and chancery have concurrent jurisdiction in all cases of fraud; and *Second,* That the evidence was admissible to show fraud on the part of Chapman in procuring the patent. As a general rule the first proposition is correct, although the books are not barren with exceptions to this proposition in its broadest signification. While courts of law may have jurisdiction in cases of fraud, it not unfrequently happens from the very circumstances and nature of the case, that such courts cannot exercise their jurisdiction to relieve against it.

Fraud in a court of equity properly includes all acts, omissions and concealments which involve a breach either of legal or equitable duty, trust or confidence justly reposed, and are injurious to another or by which an undue or unconscientious advantage is taken of another. *Belcher* v. *Belcher,* 10 Terger 121. "Courts of common law cannot supply defects of will, or rectify mistakes in written agreements or conveyances. If the end proposed is lawful, a court of common law only inquires what acts of will were really exerted, and the deed or covenant is made effectual without regard to consequences. But courts of equity are more at liberty to follow the dictates of refined justice. They consider every deed in its true light as a means employed to bring about some event, and in this light they refuse to give it force any farther than is conducive to bring about the proposed end. When from any defect of the common law, want of foresight of any of the parties, or other mistake or accident, there would be a failure of justice, it is the duty of a court of equity to interfere and supply the defect or furnish the remedy." 2 Paige 84. But so far as courts of common law can exercise their jurisdiction in cases of fraud, it may be said to be concurrent with the equity side of the court. While

Arnold v. Grimes.

we would not derogate in the least from the powers of a court of law, to investigate fraud, yet cases will occur in which chancery alone can afford relief. Thus as one court may be limited, not in its jurisdiction, but in the application and extent of it, the other is unrestricted, probing, correcting and relieving fraud, however subtle, injurious or complicated.

While at law fraud must be proven, in chancery it may be presumed. Adams on Ejectment, 467.

The interposition of the latter is often necessary for the better investigation of truth, and to give more complete redress. 3 Black. Com. 431, 437, 439.

A variety of cases has been decided and relief afforded in equity, when from the nature of the transaction and the situation of the parties, fraud and imposition might be presumed. 3 P. W. 139; Pow. on Con. 21; 8 Con 370.

Early in the history of jurisprudence, the administration of justice in the ordinary courts was found to be incomplete, and hence arose the necessity of separate courts of equity, which were organized about the end of the reign of King Edward III, for the purpose of correcting that wherein the law was defective, and matters of fraud were among the chief branches to which the jurisdiction of chancery was originally confined. Soon after separate courts of-equity were established in England, a fierce struggle arose between the law and equity courts in relation to the jurisdiction and powers of each, but as we trace the history of English jurisprudence, we find the prejudice which at first existed on the part of the common law courts, yielding to the necessity and utility of a distinctive equity jurisprudence.

Still even at the present day, it becomes sometimes a serious question to ascertain to what extent courts of law and chancery have concurrent jurisdiction in cases of fraud. The case at bar present a forcible illustration of this fact. Evidence was offered in the court below by the defendants, which was claimed in the argument would have shown that the patent to Chapman was obtained by fraud. This

10

evidence was ruled by the court to be inadmissible; and as we think very correctly, because as a general rule, (and the patent in this case does not fall within the exception,) a patent cannot be impeached in a court of law for fraud. This question underwent an able investigation in the supreme court of New York in the case of *Jackson* v. *Lawton*, 10 John 22.

That case was an action of ejectment, in which the plaintiff in the court below, gave in evidence *letters patent* dated 28th October, 1812. The defendant offered in evidence a patent for the same, but dated 5th March, 1812, which was objected to on the ground that it was subsequent to the patent to the lessor, and that the recitals it contained and the allegations of mistake in issuing the prior letters patent, could not be inquired into in an action at law. He also offered parole evidence of payment in full for the lot.

The decision of the court in excluding this evidence, was fully sustained by the supreme court, and Chief Justice Kent in delivering the opinion, says:

"It has been the uniform practice in our courts in all questions of title, to look to the elder patent and give it effect. Nor can the court take notice of any equitable claim upon the general government, which a third person might have in respect to lands in question prior to issuing the patent. We can only look to the title under the great seal, and so the law was declared in the case of *Jackson* v. *Ingraham*, 4 John 163. The elder patent must therefore be impeached and set aside, before we can acknowledge any title set up under a younger patent, and the question is whether it could be impeached by parole proof in this suit." If the elder patent was issued by mistake, or upon false suggestions it is voidable only, and unless letters patent are absolutely void upon the face of them, or the issuing of them was without authority, or was prohibited by statute, they can only be avoided in a reglar course of pleading in which the fraud, irregularity or mistake is directly put in issue. The principle has been frequently admitted that the fraud must appear on the face

of the patent to render it void in a court of law, and that when the fraud or other defect arises on circumstances *dehors* the grant it is voidable only by suit. 1 H. & M. 187, 190; 1 Mumf. 134.

The regular tribunal for this purpose is chancery founded on a proceeding by *scirie facias*, or by bill, or by information. It would be against precedent and of dangerous consequence to title, to permit letters patent, which are solemn grants of record, to be impeached collaterally by parole proof in this action.

In *Jackson* v. *Lawton*, the plaintiff in error had a much stronger case than the plaintiff here. In that case, he held a junior patent containing recitals and allegations of mistake concerning the issuing of the senior patent, and yet the allegations of mistake could not be inquired into at law. Parole proof could not be admitted to show payment. To investigate and settle all these questions he was forced to resort to a court of equity. In this case Arnold merely held a pre-emption certificate, which is not evidence of legal title, but an incipient step in the progress to title. Possessing but an equitable interest, he attempted to introduce evidence, not of fraud in Chapman in obtaining the patent, but fraud in him, in procuring a deed by which Arnold was defeated in his pre-emption. But if the evidence offered, had a tendency to show fraud in procuring the patent as was claimed in the argument, it was properly rejected, for according to the decisions of the supreme court of the United States it was not admissible for *that* purpose. *Stringer et al.* v. *Young*, 3 Peters 320; *Polk* v. *Wendall et al.,* 9 Cranch 87; 5 Wheat, 293; *Boardman et al.* v. *Reid*, 6 Peters 328; *Bagnel et al.* v. *Broderick*, 13 Peters 436; *Wilcox* v. *Jackson*, 13 Peters 498; *Patterson* v. *Winn*, 11 Wheat. 380.

In this last case, the law as laid down by Chief Justice Kent in the case of *Jackson* v. *Lawton*, was not only recognized as correct, but adopted by the supreme court as the established and settled doctrine. The court take occasion to speak of the various decisions which have prevail-

ed in the state courts, in relation to the extent that a court of law will go in permitting patents to be collaterally impeached, and while they have differed, some courts holding that the patent is only *prima facie* evidence of title, and open to extrinsic evidence to impeach its validity, and others that the defects must appear upon the face of the patent to authorize a court of law to pronounce it invalid, and that unless it do so appear, the patent is only voidable and recourse must be had to chancery. The court disposes of all these various decisions, by saying that the question was settled by the supreme court in the case of *Polk* v. *Wendall*, 9 Cranch 87. If any different doctrine than that laid down in the case of *Patterson* v. *Winn*, has obtained in the supreme court, we think it will be found to have grown out of a construction which the state courts had given to their particular laws, which the supreme court will follow; especially when made in the state courts respecting title to land. For instance, in Tennessee the courts of law allow the parties in ejectment to go back to the original entry and connect the patent with it. This rule is founded on the land laws of North Carolina, which have been construed in Tennessee to permit and require it. *Blunt* v. *Smith et al.*, 7 Wheat. 275.

The case of *Swayzie* v. *Burkl et al.*, 12 Peters 12, referred to by the counsel for the plaintiff in error was a case that went up to the supreme court from the district of Pennsylvania, where they have no court of equity, and consequently a different rule prevails necessarily, than in those states where equity is administered by courts of chancery. *Stoddard et al.* v. *Chambers*, 2 How. 285, also referred to by the counsel for the plaintiff in error, was a case in which the holder of a New Madrid certificate having a right to locate it only on public lands which had been authorised to be sold, located it on lands which were reserved from sale at the time of issuing the patent, and it was consequently declared void. We do not understand that case as deciding more than this. As the location was made upon lands expressly reserved, no title could pass

Arnold *v.* Grimes.

and the patent was void, and that a title acquired against law was examinable in a court of law. This does not conflict with the opinion of Chief Justice Kent, in the case of *Jackson* v. *Lawton*, and with the case of *Patterson* v. *Winn* and others cited. After a careful examination of all the authorities bearing upon the question; called upon as we are for the first time to declare the law upon this subject, we unhesitatingly adopt the language of the supreme court in the case of *Patterson v. Winn*, "that if a patent is absolutely void upon its face, or the issuing thereof was without authority or was prohibited by statute, or the state had not title, it may be impeached collaterally in a court of law in an action of ejectment." But that for the investigation of all other questions, a court of equity is the more eligible tribunal, and they ought to be excluded from a court of law.

We do not find anything in the authorities referred to by counsel for the plaintiff in error, when properly understood, as opposed materially to those decisions which have influenced us in coming to our conclusion. Much was said at bar in relation to the case of *Stoddard* v. *Chambers*. We cannot think the points decided in that case, as conflicting at all with the great current of authority upon this subject.

The case went up upon instructions to the jury in relation to a conflict of title. We have examined the arguments of counsel and the case at length, and have not been able to find that the question of fraud was in the case at all, and yet the learned Judge who pronounced the decision, takes occasion to express an opinion in relation to patents obtained by fraud, in a manner which does not apparently harmonize very well with the repeated decisions of the supreme court. The evidence in this case therefore, was properly excluded. The facts set up in the defence, are all examinable in a court of equity. To that forum if fraud has been perpetrated, the plaintiff in error can resort. The door of equity is always open to all entitled to relief. There fraud may be corrected, and justice

---

administered. As it is not improbable that this case may come before the court in chancery, we have not thought it proper or necessary to pass upon the relevancy of the testimony offered, nor upon the position assumed in the argument in relation to *Arnold's* equitable title. The case must be affirmed upon the ground, that the patent was not impeachable in this action collaterally for fraud, and therefore the evidence was correctly excluded.

*D. Rorer* and *J. C. Hall*, for plaintiff in error.

*H. W. Starr*, for defendant.