[LOCAL LAW.]

## DOE, *ex dem.* PATTERSON, *against* WINN and Others.

In general, the validity of a patent for lands can only be impeached for causes anterior to its being issued, in a Court of equity. But where the grant is absolutely void, as where the State has no title, or the officer has no authority to issue the grant, the validity of the grant may be contested at law.

The laws of Georgia, in the year 1787, did not prohibit the issuing of a patent to any one person for more than 1,000 acres of land. The proviso in the act of Assembly of the 17th of February, 1783, limiting the quantity to that number, is exclusively confined to *head-rights.*

*Feb. 24th.*        THIS cause was argued by Mr. *Berrien* and Mr. *Wilde,* for the plaintiff, and by Mr. *White,* for the defendant.

*March 8th.*        Mr. Justice THOMPSON delivered the opinion of the Court.

This case comes up from the Circuit Court for

the District of Georgia. And the question presented for decision appears by a certificate of division of opinion in that Court, as to the admissibility of the grant offered in evidence on the part of the plaintiff.

The certificate states, that the plaintiff, to maintain his action, offered in evidence a patent, purporting to be a grant, in due form of law, from the State of Georgia to one Basil Jones, for *seven thousand three hundred* acres of land, including the premises in question. And, also, the warrant of survey upon which the said tract of land was laid off and surveyed, and the minutes of the Court which granted the warrant. The defendant's counsel objected to the grant's going to the jury, affirming the same to be *void* in law, inasmuch as no grant could issue under the laws of the State for so great a number of acres as are comprised in the said grant. On which question so made the Court was divided in opinion.

The broad ground assumed in the objection is, that the patent was *absolutely void*, and not even *prima facie* evidence of title. The question, as stated, does not distinctly present to the Court the point that was probably intended to be submitted. The objection alleges the patent to be void, because, by the laws of Georgia, no grant could issue for *so great a number of acres as seven thousand three hundred*, without stating the limitation as to the number of acres. But, from the argument, it is understood, that the limitation contended for on the part of the defendant,

1826.

Patterson
v.
Winn.

How far the
validity of a
patent of lands
may be in-
quired into at
law.

is to *one thousand acres*, and that all grants for a greater quantity are absolutely void.

How far it is within the province of a Court of law to entertain inquiries tending to impeach a patent, is a question upon which conflicting opinions have been held; particularly in the different State Courts in this country. By some, the patent is considered only *prima facie evidence of title*, and open to extrinsic evidence to impeach its validity. By others, that the defect must appear *upon the face* of the patent, to authorize a Court of law to pronounce it invalid; and that unless the defect does so appear, the patent is only voidable, and recourse must be had to a Court of Chancery to vacate it. By others it has been considered, that the powers of a Court of law were not so broad as laid down in the former of these opinions, nor so limited as in the latter, but that a Court of law may inquire whether the patent was issued *without authority*, *or against the prohibition of a statute, or whether the State had title to the land granted.* It is unnecessary,

In general, the
validity of a
patent can
only be im-
peached for
causes anteri-
or to its being
issued, in a
Court of equi-
ty. But where
the grant is
absolutely
void, as being
issued without
authority, or
against the
positive prohi-
bitions of sta-
tute, its validi-
ty may be con-
tested at law.

if not improper, at this time, to enter into an examination which of these opinions is best founded in principle. For, so far as the question applies to the present case, it has been settled by this Court in the case of *Polk's Lessee* v. *Wendell et al. (9 Cranch's Rep. 87.)* In that part of the case to which I refer, the exceptions under consideration were for causes not apparent on the face of the patent; and the proposition stated for decision is, whether in any, and in what cases, it is allowable, in an action of ejectment, to im-

peach a grant from the State for causes *anterior to its being issued.* It is said, that the laws for the sale of public lands provide many guards to secure the regularity of grants, to protect the incipient rights of individuals, and, also, to protect the State from imposition. Officers are appointed to superintend the business, and rules are framed prescribing their duty. These rules are, in general, directory, and when all the proceedings are completed by a patent, issued by the authority of the State, a compliance with these rules is presupposed. That every prerequisite has been performed, is an inference properly deducible, and which every man has a right to draw, from the existence of the grant itself. It would be extremely unreasonable to avoid a grant in any Court for irregularities in the conduct of those who are appointed by the government to supervise the progressive course of a title, from its commencement to its consummation in a patent. But, in order to guard against the conclusion that this doctrine would lead to, closing the door against all inquiry into any matter whatever beyond the grant for the purpose of avoiding it, the Court adds, that the great principles of justice and of law would be violated, if there did not exist some tribunal to which an injured party might appeal, and in which the means by which an elder title was acquired might be examined, if it had been acquired by the violation of principles essential to the validity of a contract; but that a Court of equity is the more eligible tribunal, in general, for these ques-

-tions, and they ought to be excluded from a Court of law. But the Court say, there are cases in which a grant is absolutely void, (or *inoperative*,) as where the State has no title to the thing granted, or *where the officer had no authority to issue the grant.* In such cases, the validity of the grant is necessarily examinable at law.

Patterson
v.
Winn.

This doctrine was again recognised and sanctioned by this Court five years afterwards, when the same cause (5 *Wheat. Rep.* 293.) was a second time under consideration ; and it is in coincidence with the rule settled in the Supreme Court of New-York in the case of *Jackson* v. *Lawton,* (10 *Johns. Rep.* 23.) We may, therefore, assume as the settled doctrine of this Court, that if a patent is absolutely void upon its face, or the issuing thereof was without authority, or was prohibited by statute, or the State had no title, it may be impeached collaterally in a Court of law, in an action of ejectment. But, in general, other objections and defects complained of must be put in issue, in a regular course of pleadings, on a direct proceeding to avoid the patent; and we are not aware of any contrary rule prevailing in the State Courts of Georgia. But, so far as we have any information on the subject, the practice there is in accordance with the rule laid down by this Court.

Whether the grant in this case issued against the provisions of the laws of Georgia.

The objection in this case to the admissibility of the grant in evidence, is, that it was issued without the authority of law, and in violation of certain statutes of the State of Georgia, which, it is alleged, prohibit the issuing of a grant to

any one person for more than *one thousand acres of land;* and if the statutes referred to will warrant this construction, the objection was well taken, and can be sustained in a Court of law. And this leads to an examination of those statutes as applicable to the grant in question.

The grant bears date on the 24th of May, 1787, and is for 7,300 acres of land in the county of Franklin, described by metes and bounds, and refering to a plat of the same thereunto annexed. No consideration is expressed in the grant, or any designation of the nature of the rights which made up the quantity of land mentioned in the grant, but it is in the common form prescribed by statute. The proceedings of the Court of Franklin county, on the application of Basil Jones, accompany the grant, by which it is ordered that he have 7,300 acres in lieu of part of old warrants of John Peter Wagnor—Bounty reserved. This shows that the aggregate quantity of land mentioned in the grant was made up of sundry old warrants, and affords also an inference of the existence of a practice of consolidating a number of warrants in one grant; and there is nothing in the land laws of Georgia prior to the year 1794, at variance with such a practice. The limitation as to quantity will be found to relate to *warrants* for head-rights, and not to grants; and, as warrants were transferable, no objection existed to their being united in one grant.

The land law of Georgia is comprised under several statutes, passed at different periods, va-

1826.

Patterson
v.
Winn.
The several
statutes    of
Georgia com-
posing the land
law,   being in
pari      mate-
ria, are to be
construed    as
one statute.

rying and modifying the system occasionally, as policy required. But all being in *pari materia*, are to be looked to as one statute, in explaining their meaning and import. Under these laws, there were various ways in which persons became entitled to rights, and could obtain warrants for land; such as head-rights, according to the number of a family; bounties to soldiers and to citizens, and likewise for the encouragement of certain manufactures, &c. And for the purpose of ascertaining and determining whether applicants were entitled to warrants, a land Court was instituted in each county, to receive applications for lands, and grant warrants for surveys to such as should show themselves entitled to land, according to the provisions of the land laws. A county surveyor was required to be appointed by each county, who was authorized to lay out and survey, to any person who should apply to him, the land for which a warrant had been obtained. And he was required to record, in an office to be kept for that purpose, all surveys by him made, so as to enable those who had any objections to make to the passing of the grant, to enter a *caveat*, which was to be tried by a jury of twelve men, sworn to try the matter according to law and equity. And under the act of July 17th, 1783, (*Prince's Dig*. 266. sec. 36.) this was declared to be final and conclusive. An appeal was afterwards given to the Governor and Executive Council, (sec. 56. of *the Dig.*) who were required, and empowered to proceed to decide such caveats, in man-

ner and form as they should think most condu-
cive to justice; and expressly declaring, that
from their decision there should be no appeal.
And this was the existing law at the time the
grant in question issued. By a subsequent sta-
tute, *(Dig.* sec. 83.) the power of hearing and
determining such appeals, and signing grants,
was vested in the Governor alone.

To permit an inquiry whether a *warrant.* ob-
tained under such guards and checks, was autho-
rized by law, would be opening the door to end-
less litigation, and against-the spirit and policy
of the land laws in general, as well as the letter
of the statute, which provides for caveats, and
which declares the ultimate decision thereon to
be *final and conclusive.* If the validity of the
warrants cannot be called in question, the issu-
ing of the grant follows, as matter of course,
and cannot be said to be without authority, un-
less the statute prohibits the issuing of a grant
for more than one thousand acres of land.

The act relied upon on the part of the de-
fendant, as containing such prohibition, is that of
the 17th of February, 1783, *(Dig.* sec. 82.) and
is to be found in the proviso to the first section.
The enacting clause relates entirely to *head-
rights,* and declares, that each master or head of
a family, shall be *allowed,* as his own head-right,
and without any other or further charges than
the office and surveying fees, two hundred acres;
and shall also be permitted to purchase, at the
rates therein specified, a further quantity, accord-
ing to the number of head-rights in such family.

The prohi-
bition contain-
ed in the act
of 1783, limi-
ting the quan-
tity of land to
be granted to
any one per-
son, is confi-
ned to head-
rights.

*Provided* the quantity of land *granted* and *sold* to any one person shall not exceed one thousand acres, and that such person do live on and cultivate a part of the said land twelve months, before he shall be entitled to a *grant* for the same.

The word *granted* is said to be used here in its technical sense, as synonymous with patent, and to imply a general prohibition to issue a grant to any one person for more than one thousand acres. Admitting this to be the sense in which the term is used, the consequence would not follow that is contended for. The term is here used in the *proviso;* the office of which is, to limit and restrict the operation of the enacting clause. The enacting clause relates entirely to *head-rights,* and is without limitation as to quantity; that depended on the number of the family. The master or head of the family is *allowed* 200 acres as his own head-right, on paying office and surveying fees, and is permitted to *purchase,* at the rate therein mentioned, any further quantity, according to the number of head-rights in his family. The proviso, however, limits the quantity to one thousand acres; but the limitation is upon the subject matter of the enacting clause, to wit, head-rights. The enacting clause speaks of two modes of acquiring these head-rights. One, a gratuity *allowed* to the head of the family; the other, a *purchase.* And the words *granted* and *sold,* as used in the proviso, may well be construed in reference to these two modes of acquiring land. And the proviso is equivalent to saying, that no one per-

son shall be allowed, on his own head-right, and on the purchase of head-rights in his family, more than one thousand acres. But this does not prohibit him from purchasing other warrants, and including all in one grant when it is issued.

That the word *granted*, as here used, has reference to the warrant or incipient step towards acquiring the title, and not to the consummation of it by grant, is evident both from the subsequent part of the proviso, and from the use of the same word, as synonymous with warrant in other parts of the land laws. By the proviso, the person to whom land is *granted* and *sold*, is required to live on, and cultivate a part of the said land twelve months, before he shall be entitled to a *grant* for the same. To give to the word *granted*, in the former part of the sentence, the same meaning as to the word *grant* in the latter part, would involve gross inconsistency.

This construction is corroborated by the enacting clause in the third section of the same act, containing, substantially, a like provision, that every person applying by head-rights as aforesaid, shall, previous to his obtaining a *grant* for his land, or having it in his power to dispose of the same, (otherwise than by will) settle and improve a part of such tract or tracts as he may obtain a warrant and survey of, &c.

And, in a subsequent act, passed the 23d of December, 1789, (*Dig.* sec. 85.) the very word *granted* is used as the act of the land Court, whose authority extended only to the issuing of warrants, and not grants. The enacting clause

1826.

Patterson
v.
Winn.

gives to three or more Justices of the Peace, in their respective counties, the same powers that had been exercised by four Justices, and an Assistant Justice, under a former act; provided that the said three or more Justices shall each of them sign all warrants for land by *them granted.*

Other parts of these land laws might be referred to, to show that this word is not always used in a technical sense as synonymous with patent. And that it is not so used in the proviso to the act of 1783, we think is very evident; and throughout all these laws, so far as we have been able to discover, whenever there is a limitation to one thousand acres, it is applicable to the *warrant,* and not to the *grant.*

It is clearly to be inferred, from various parts of these land laws, that warrants were transferable. Thus, in one of the earliest acts passed on the subject in the year 1777, (*Dig.* 261.) it is provided, that all persons who have had lands ordered them, and have not taken out grants for the same, or *sold* their warrants or rights, or are either dead, or left the State, such person or persons as have *bought* such warrants, or rights and titles, and continued in this State, shall have such lands granted them, agreeably to such order or warrant so *purchased.* And, the prohibition afterwards in the year 1794, (*Dig.* 280.) to survey or renew transferred warrants, necessarily implies, that, previous to that time, such transfers were sanctioned by the land laws; and, if so, there could be no reason why a number of such

warrants should not be consolidated, and included under one grant, although the aggregate quantity might exceed one thousand acres. There might be very good reason for putting this limitation upon *warrants* for head-rights, as the settlement and improvement of the country might be thereby promoted.

That grants for more than one thousand acres were sanctioned, is evident from the act of the 23d of December, 1789, (exemplification produced,) fixing the fees of the officers of the State; by which the Governor is allowed six dollars for signing a grant of land *exceeding one thousand acres*. So, also, in the act to revise and amend the above act, passed the 18th of December, 1792, (*Dig.* 173.) the Governor is allowed, on all grants *above* one thousand acres, at and after the rate of two dollars for every thousand acres therein contained. (*Dig.* 173.)

Upon the whole, therefore, without pursuing this examination further, we are satisfied, that, in the year 1787, when the grant in question was issued, the land laws of Georgia did not prohibit the issuing of a patent to any one person for more than a thousand acres; and that the grant offered on the trial is not, therefore, void in law, and should have been admitted in evidence.

CERTIFICATE. This case came on, &c. On consideration whereof, this Court is of opinion, and directs it to be certified to the said Circuit Court, that the evidence offered in the Court be-

1826.

The U. S.
v.
Amedy.

low by the plaintiff, and to the competency of which objection was made, and upon which question the opinions of the Judges of said Court were opposed, was competent evidence, on the part of the plaintiff, to sustain the issue on his part, &c.