TERRITORY OF HAWAII, BY C. T. BAILEY, COMMISSIONER OF PUBLIC LANDS OF THE TERRITORY OF HAWAII, *v.* HELEN McH. ROBINSON, ALICE ROBINSON, F. GAY AND FRANCIS GAY, AUBREY ROBINSON, J. R. GAY, ALICE ROBINSON, SINCLAIR ROBINSON AND AYLMER F. ROBINSON, COPARTNERS DOING BUSINESS UNDER THE NAME OF GAY & ROBINSON.

No. 1233.

RESERVED QUESTIONS FROM CIRCUIT COURT FIFTH CIRCUIT. HON. L. A. DICKEY, JUDGE.

ARGUED OCTOBER 25, 26, 27, 28, 29, 1920.     DECIDED NOVEMBER 24, 1920.

COKE, C. J., KEMP AND EDINGS, JJ.

PUBLIC LANDS—*patent valid on its face—subject to attack in action at law, when.*

    A patent issued in due form of law, valid on its face, may be attacked and declared void in an action at law provided the evidence shows it to be void for want of authority for its issue.

SAME—*same—effect of prior grant, reservation from sale or appropriation.*

    When the land covered by a patent has been previously granted, reserved from sale or appropriated the patent is void for want of authority for its issue.

CROWN LANDS—*effect of designating lands as such.*

Designating certain lands as crown lands had the effect of appropriating them and reserving them from sale except by legislative authority.

EJECTMENT—*parties plaintiff.*

In an action in ejectment the fact that the complaining party is the Territory does not affect the general rule that the State is always at liberty to avail itself of all the remedies which the law allows to every person, natural or artificial, for the vindication and assertion of its rights.

OPINION OF THE COURT BY KEMP, J.

This is an action in ejectment by the Territory of Hawaii by C. T. Bailey, commissioner of public lands, against Helen McH. Robinson et al., copartners doing business under the name of Gay & Robinson, to recover a tract of land described in the petition as "situated at Hanapepe, in the district of Kona, Island of Kauai, Territory of Hawaii," setting forth the metes and bounds thereof and excepting therefrom "all that certain piece or parcel of land known as the ili of Koula, more particularly described as follows:" (here follows description of the land excepted by metes and bounds) containing an area of 740 acres. The defendants filed an answer and by leave of court interposed a plea in bar in which it is alleged that the plaintiff is not the owner or ,entitled to the possession of the land for the reason that the Kingdom of Hawaii, the predecessor in title of the plaintiff, had released and quit-claimed all its right and interest in the land described in the complaint by royal patent 6998, a copy of which was attached to the plea. The patent attached is dated October 30, 1877, and shows upon its face that it is based upon mahele award No. 55 and was issued to Paniani upon the application of Mrs. Sinclair, "the present occupier of said land." It designates the land as "½ Koula situated in the ahupuaa of Hanapepe,

Island of Kauai" and describes it by metes and bounds, which include the land described in the complaint.

Plaintiff filed a traverse to the plea in bar in which it denies the allegation that the plaintiff is not the true owner or entitled to the possession of the land described in the complaint and in this regard the plaintiff in its traverse to the plea in bar says:

"That the lands described in plaintiff's complaint are situated within the ahupuaa of Hanapepe, which ahupuaa was set apart as a crown land by the legislature of the Kingdom of Hawaii, by the Act of the seventh day of June, A. D. 1848;

"That the fee simple title of said crown lands is in the United States of America, and the Territory of Hawaii is entitled to the use, possession and control thereof;

"And that the said land so described in plaintiff's complaint, with the exception contained in said complaint, has never been legally sold or otherwise disposed of by the Territory of Hawaii or its predecessors in interest."

Plaintiff further sets up in its traverse

"That the royal patent referred to in said plea in bar, to wit, royal patent No. 6998, is void and of no effect, for the reasons that

"First: Kalakaua had no authority under the law to issue the same, and

"Second: The said patent was issued in contravention of law, and in defiance thereof."

In support of these allegations the plaintiff has set forth a detailed history of the title to the land in question supported by many exhibits. The traverse and the exhibits are very voluminous and will not be set forth in this opinion. As to the exhibits it is sufficient to say that they consist largely of extracts from the mahele book, the records of land grants and the records of the privy council and minister of the interior and are correctly described in said traverse.

The defendants demurred to the traverse on the ground that the matters and things therein averred are not sufficient in law to constitute a defense to the plea in bar for the following reasons: (1) That a royal patent issued by the Kingdom of Hawaii, valid on its face, can be attacked and set aside or declared void only in equity and not in an action at law; (2) that the said traverse and the matters and things therein averred are a collateral attack and an attempt to declare void in an action at law royal patent 6998, a royal patent issued by the Kingdom of Hawaii, valid on its face, and that the said royal patent cannot be attacked and declared void in this action at law.

Thereupon the circuit court at the request of parties reserved to this court the following questions:

"1.   Can a royal patent issued by the Kingdom of Hawaii, valid on its face, be attacked and set aside or declared void in an action at law in the courts of the Territory of Hawaii?

"2.   Can Royal Patent No. 6998 be attacked and declared void under the said traverse in the above entitled action?

"3.   Are the matters alleged in the traverse sufficient in law to constitute a defense to the said plea in bar?

"4.   Should the aforesaid demurrer to the aforesaid traverse be sustained?"

The argument on these questions has taken a very wide range and we do not feel that it is necessary to notice all of it.   We think that the traverse sufficiently alleges that the lands described in the patent were at the date of the patent crown lands unless by reason of the particularity with which the facts are set forth on which this allegation is based the plaintiff has destroyed the effect of the general allegation to that effect.   Plaintiff says in effect that after the great mahele by which Paniani was given one-half of the ili of Koula and had applied to the land

commission for an award he also applied to the privy council to purchase the government half of Koula and to settle the commutation which he owed the government in his half and that this arrangement was finally consummated by the government and his heir after his death; that an official survey of said ili was made by the government and a patent (No. 1108) issued to Paniani for the whole of said ili by the field notes officially ascertained by said survey to contain the whole thereof, and that none of the subsequent proceedings could affect or change the rights of the parties.

It is the contention of the defendants that when Paniani received a mahele of one-half of Koula the only right he had was to take his claim before the land commission for an award and that the proceedings before the privy council and the other proceedings based thereon culminating in royal patent No. 1108 to Paniani, relied on by plaintiff, could only have the effect of conveying to Paniani the government's one-half in Koula and could not affect Paniani's one-half interest in said land; that it was a legal impossibility for the said proceedings to have the effect contended for by plaintiff because they say that prior to the act of 1860 for the relief of certain konohikis no one had the authority to grant to Paniani the one-half of Koula maheled to him until he procured an award therefor from the land commission and paid the government commutation thereon.

The plaintiff relies upon section 7 of the Act of November 7, 1846, published in the Revised Laws of 1905 at pages 1243-1245, as authorizing the settlement which it contends Paniani and the government made of their rights in the ili of Koula. Said section is as follows:

"If any konohiki wish to have his portion of any given ili or ahupuaa set off to him according to his rights in the same, that he may procure an allodial title therefor, he

may petition the Minister of the Interior, on stamped paper, who shall have power, with the approbation of His Majesty in Privy Council, to complete the arrangements for the same, after which there shall be given to the kono-hiki a patent for the same, in accordance with Act 2, part 1, chapter 7, article 2."

We think it is clear that the statute above quoted conferred upon the minister of the interior with the approval of His Majesty in privy council the authority to settle with a konohiki who had by the great mahele been given an interest in an ili his rights in said land and to issue a patent therefor without the prior action of the land commission thereon. At the option of the konohiki two-thirds of the land given to him by the mahele could be set off to him, he surrendering to the government the other one-third, or he could purchase the government's one-third, usually referred to as paying the government's commutation, and procure a patent for the whole. Where the konohiki was by the mahele given an undivided interest in an ili and the remaining interest was government land as distinguished from crown land the minister of the interior with the approval of His Majesty in privy council could also sell to the konohiki the government's interest and issue a patent therefor. Since the patent in each case would be issued by the same authority we see no reason why the whole ili could not be included in one patent. In either case the land to be patented would have to be surveyed and the description as ascertained by the survey inserted in the patent. If a konohiki who had by the mahele been given an undivided one-half interest in an ili settled the government's commutation in his half and at the same time purchased the government's half and accepted a patent for the whole ili in which the land was described by metes and bounds as ascertained by a survey made for the purpose of carrying out his transaction with

the government we do not think he could afterwards be heard to say that the description did not embrace the whole of the land. This last is what the plaintiff says in his traverse was done as to the ili of Koula; that is, that Paniani settled the government's commutation in his half and purchased the government's half, the government issuing to him a patent by surveyed description for the whole of said ili. If this is true, and on demurrer the allegations are accepted as true, the whole of the ili of Koula was included in royal patent 1108 and the area and extent of said ili was officially determined by said survey and patent. All of the land within the boundaries of the ahupuaa not included within some ili or kuleana is a part of the ahupuaa and when the boundaries of the ilis and kuleanas within the ahupuaa have been officially and finally determined the remainder of the land within the boundaries of the ahupuaa is part of the ahupuaa regardless of what may have theretofore been claimed as to the ancient boundaries of the lesser tracts within it. As an illustration of what we mean let us consider the ahupuaa of Hanapepe. The out-boundaries of the ahupuaa include lands which admittedly are not part of it. One such tract is the ili of Koula. Now let us suppose that Paniani had been awarded by the land commission the one-half of Koula given to him by the mahele and in order to describe the land included in the award the land commission had caused the ili to be surveyed and a dividing line run between his half and the government half and Paniani accepted the award, that is, did not appeal, can it be doubted that this would have been ·a final and official determination of what were the ancient boundaries of said ili regardless of what Paniani or kamaaina witnesses might have claimed the ancient boundaries to be? And can it be doubted that under these circumstances land within the ahupuaa and not included within the ili as

officially described nor within some other ili or kuleana would be a part of the ahupuaa? We think not. Likewise if the minister of the interior with the approval of His Majesty in privy council had, as we have found· he did have, the authority to settle with Paniani his rights in the ili of Koula this settlement which plaintiff has set up in its traverse had the same effect, that is, officially determined what the ancient boundaries of Koula were and other land within the boundaries of the ahupuaa would be part of the ahupuaa.

We therefore think that the particulars plead by plaintiff have not destroyed the effect of its general allegation to the effect that the lands in question were at the date of the patent crown lands and since the act of January 3, 1865, the officers executing the patent in question have been without authority to grant crown lands. This brings us then to a consideration of the principles which bear directly upon the questions propounded.

In *Doolan* v. *Carr*, 125 U. S. 618, which was an action in ejectment in the circuit court of the United States brought by Wm. B. Carr against James Doolan and James McCue to recover possession of 320 acres of land described as the east half of section 27, township 2, range 1 east of the Mount Diablo base and meridian of the public land surveys of the United States of America in the State of California, the plaintiff introduced in evidence a patent from the United States to the Central Pacific Railroad Company for the land in question and a deed from said railroad company to himself. The patent purported to be issued under an act of Congress approved July 1, 1862, as amended by act of July 2, 1864, to aid in the construction of a railroad and telegraph lines from the Missouri river to the Pacific Ocean. The defendant thereupon in order to show that the patent to the railroad company was issued without authority of law and

therefore void offered evidence to show that the land in question was within the boundaries of an ancient Mexican grant to Jose Noriega and Robert Livermore, said Mexican grant being for "two square leagues, provided that quantity be contained within the said boundaries; and if less than that quantity be found to be contained therein, then that less quantity and all of said describel tract of land;" that in 1852 the owners of said grant petitioned the board of land commissioners to have said grant confirmed, and on February 14, 1854, the said board of commissioners confirmed the same to them and their heirs and assigns and the decree of confirmation described the boundaries thereof as in the ancient grant with this proviso: "Provided that within the same no greater quantity than two square leagues were found to be contained; and if a less quantity should be found therein, then that less quantity was confirmed and all of said described tract of land;" that said decree of confirmation was on appeal affirmed by the United States district court for the northern district of California on February 18, 1859, "to the same extent and by the same description, and under the same conditions as said board of land commissioners had done," and the Supreme Court of the United States, at the December term A. D. 1860, affirmed the said decree of the United States district court and every part thereof; that during the year 1865 an official survey of the lands so confirmed was made by or under the direction of the surveyor general of the United States for the State of California which was duly approved by said surveyor general in the year 1866, and which survey included the half section of land described in the complaint; that said survey was set aside by the secretary of the interior in the year 1868 and a new survey ordered by him within the boundaries set forth in said decree "which should contain

but two square leagues of land or thereabouts;" that in March, 1869, the said surveyor general caused the grant to be again surveyed within the boundaries set forth in said decree of confirmation, the amount so segregated consisting of about two square leagues in accordance with the said order of the secretary of the interior, and said survey was approved by the surveyor general on May 11, 1870, and by the commissioner of the general land office on March 1, 1871, and finally approved by the secretary of the interior on June 6, 1871, and on said last named date the surplus of the land embraced within the boundaries contained in said grant and in said decree became freed and discharged from the claims and reservations of said Mexican grant and became public land of the United States and a part of the public domain thereof; that the entire half section of land described in the complaint is located within the boundaries stated and tract described in and confirmed by said decree of the board of land commissioners of the United States district court and of the Supreme Court of the United States but was not included within the tract surveyed in March, 1869, and finally approved June 6, 1871, as aforesaid, and said half section of land was held and claimed as a part and parcel of said Mexican grant and was reserved as such continually down to the 6th day of June, 1871, and on said last named date it became for the first time public land of the United States. The plaintiff objected to the proof thus offered by the defendant on the ground "that the United States patent cannot be collaterally attacked in this action; that it can be attacked by bill in equity only; that the said United States patent and the recitals therein contained are conclusive evidence in this action that the legal title of the lands therein described was granted and transferred by the United States to the grantee named in said patent, and, taken in connection with the deed from the railroad

company to the plaintiff, is conclusive evidence of the plaintiff's right to recover." The trial court sustained the objection and refused to allow said proof or any part of it to be made, to which the defendant excepted. The court then charged the jury that "The patent title to this land to the Central Pacific Railroad Company is conclusive in this case. It cannot be attacked in a collateral manner. If it can be attacked at all it is only in a direct proceeding for the purpose of vacating the patent; and, without further remark upon this one way or the other, it may be sufficient to say that I charge you the law is that so far as this case is concerned, the patent from the government to the railroad company, the first patent introduced here, is conclusive of the rights of the parties in this case." To this charge the defendant excepted and the case before the supreme court turned upon the correctness of the ruling of the court on the proposition that in this action at law none of the evidence offered by the defendant could be received to impeach the validity of the patent and that such an issue as that attempted to be raised by the defendant could only be made by a suit in equity to set it aside. In laying down the general principle governing the right to attack a patent issued by the government the court said: "There is no question as to the principle that where the officers of the government have issued a patent in due form of law, which on its face is sufficient to convey the title to the land described in it, such patent is to be treated as valid in actions at law, as distinguished from suits in equity, subject, however, at all times to the inquiry whether such officers had the lawful authority to make a conveyance of the title. But if those officers acted without authority; if the land which they purported to convey had never been within their control, or had been withdrawn from that control at the time they undertook to exercise such authority, then their

act was void—void for want of power in them to act on the subject-matter of the patent, not merely voidable; in which latter case, if the circumstances justified such a decree, a direct proceeding, with proper averments and evidence, would be required to establish that it was voidable and should therefore be avoided. The distinction is a manifest one although the circumstances that enter into it are not always easily defined. It is, nevertheless, a clear distinction, established by law, and it has been often asserted in this court, that even a patent from the government of the United States, issued with all the forms of law, may be shown to be void by extrinsic evidence, if it be such evidence as by its nature is capable of showing a want of authority for its issue." The court concluded that: "To the extent of the claim when the grant was for land with specific boundaries, or known by a particular name, and to the extent of the quantity claimed within out-boundaries containing a greater area, they are excluded from the grant to the railroad company. Indeed, this exclusion did not depend upon the validity of the claim asserted, or its final establishment, but upon the fact that there existed a claim of a right under a grant by the Mexican government, which was yet undetermined, and to which therefore the phrase 'public lands,' could not attach, and which the statute did not include, although it might be found within the limits prescribed on each side of the road when located."

It has been repeatedly held by the Supreme Court of the United States that a patent is void which attempts to convey lands that have been "previously granted, reserved from sale or appropriated." *Wilcox* v. *McConnel*, 38 U. S. 496; *Stoddard* v. *Chambers*, 43 U. S. 284; *Reichart* v. *Felps*, 73 U. S. 160; *Best* v. *Polk*, 85 U. S. 112; *Burfenning* v. *Chicago, St. Paul, etc., Ry. Co.*, 163 U. S. 321.

The case of *Wilcox* v. *McConnel* was an action of

ejectment brought against Wilcox, the commanding officer at Fort Dearborn, to recover possession of land held by him in that character. This land was entered under a preemption claim by one Beaubean who paid the purchase price and procured the register's receipt therefor. He afterwards sold and conveyed his interest to the lessor of the plaintiff. The question was whether the register's certificate which seems to have been treated as sufficient evidence of title, if it was valid, could be impeached by testimony that the land was not subject to entry. In giving its opinion on this question the supreme court said: "When a court has jurisdiction it has a right to decide every question which occurs in the cause; and whether its decision is correct or otherwise, its judgment until reversed is regarded as binding in every other court. But if it act without authority, its judgment and orders are regarded as nullities. They are not voidable but simply void." The court then proceeded to apply this principle to the case before it in the following language: "Even assuming that the decision of the register and receiver, in the absence of fraud, would be conclusive as to the facts of the applicant then being in possession and his cultivation during the preceding year because these questions are directly submitted to them; yet if they undertake to grant preemptions in land in which the law declares they shall not be granted, then they are acting upon a subject-matter clearly not within their jurisdiction; as much so as if a court whose jurisdiction was declared not to extend beyond a given sum should attempt to take cognizance of a case beyond that sum."

In *Stoddard* v. *Chambers,* which was an action in ejectment, an attempt was made to show that the defendant's patent was void. The court said in that case: "So it appears that when the defendant's claim was entered, surveyed and patented the land covered by it, so far as

the location interferes with the plaintiff's survey, was not 'a part of the public land authorized to be sold.' On the above facts the important question arises whether the defendant's title is not void. That this is a question as well examinable at law as in chancery will not be controverted."

In *Polk's Lessee* v. *Wendell,* 13 U. S. 87, the court, after stating that a court of equity is a tribunal better adapted to the examination of the validity of a patent than a court of law, said: "There are cases in which a grant is absolutely void; as where the State has no title to the thing granted or where the officer had no authority to issue the grant. In such cases the validity of the grant is necessarily examinable at law." In *Patterson* v. *Winn,* 24 U. S. 380, after citing the case of *Polk's Lessee* v. *Wendell,* the court said: "We may therefore assume as the settled doctrine of this court that if a patent is absolutely void upon its face or the issuing thereof was without authority or was prohibited by statute, or the State had no title, it may be impeached collaterally in a court of law in an action of ejectment. But in general other objections and defects complained of must be put in issue in a regular course of pleadings on a direct proceeding to avoid the patent."

From the foregoing cases we think it is clear that a patent issued in due form of law, valid on its face, may be attacked and declared void in an action at law provided the evidence shows it to be void for want of authority for its issue and not merely voidable. They further show that if the land covered by the patent has been "previously granted, reserved from sale or appropriated" the patent is void for want of such authority and not merely voidable. That designating certain lands as crown lands would have the effect of appropriating them cannot be doubted. But the defendants assert that even if this

is the correct rule as applied to cases between individuals the opposite rule should be applied to cases where the government is the complaining party. No direct authority has been cited in support of this contention and we know of none. Counsel for defendants have cited several cases in which the United States government by bills in equity sought to have patents issued by it canceled and assert that they have found no case in which the government ever brought such an action at law. Neither has counsel for plaintiff cited any. We have examined the cases cited by the defendants in which the government sought by proceeding in equity to have its patent canceled and do not think that they can be considered as authority for or against defendants' contention that this case can be maintained, if at all, only in a court of equity. In each of the cases cited the patent sought to be canceled was for lands which the officer issuing the patent had authority to dispose of upon a proper showing by the applicant and the government was assailing the patent on grounds which if established would render the patent voidable and not absolutely void, such as false and fraudulent representations by the applicant as to the character of the land or as to the settlement, improvement and cultivation of a preemption by the applicant, etc. In this case we have the defendants relying upon a patent which is, according to plaintiff's contention, absolutely void for want of authority for its issue and which, if plaintiff's contention is established, conveyed to the grantee named in it no title whatsoever either legal or equitable. When the officers of the government issue a patent to land over which they have no jurisdiction the patent is, according to the many authorities which we have cited, absolutely void and the legal title to the land described in such patent remains in the government. This it seems to us is sufficient to authorize the government to try the issue raised

in ejectment, although in a case involving a voidable patent the government not having the legal title would be compelled to go into equity to have it canceled.

The general rule is that a State is always at liberty to avail itself of all the remedies which the law allows to every person, natural or artificial, for the vindication and assertion of its rights which includes the right to maintain an action in ejectment when it claims title to land in the possession of another. *Tindal* v. *Wesley*, 167 U. S. 204, 223; Warvelle on Ejectment, Sec. 173. Neither on principle nor authority can we see any justification for denying the benefit of that rule to the Territory in this case.

We have not discussed the proceedings subsequent to the issuance of patent No. 1108 which are set up in the traverse for the reason that in our opinion they could have no bearing on the question here involved, namely, the right of the plaintiff to maintain this action at law. This is true because if plaintiff is right in its contention that the lands covered by the patent were at the date of the patent set up by defendants crown lands nothing short of legislative action could have authorized their alienation and if plaintiff should fail to establish its contention in that respect the patent is conclusive of all the other questions.

Having concluded that the plaintiff has plead facts which if found to be true would render the patent set up by defendants void and not merely voidable we hold that it is entitled to try that issue at law.

We therefore answer questions numbers 1 and 2 in the affirmative with the limitation that the evidence must show that the patent is void for want of authority for its issue and not merely voidable. Question number 3 is answered in the affirmative and question number 4 in the negative.

*J. Lightfoot,* First Deputy Attorney General, for plaintiff.

*A. G. M. Robertson* and *R. B. Anderson* (*Robertson, Castle & Olson; Frear, Prosser, Anderson & Marx* and *Perry & Matthewman* on the brief) for defendants.