## MEASURE OF A WIDOW'S LIFE ESTATE.

Common Pleas Court of Auglaize County.

### HARRIET C. BLUME v. CHARLES J. THOMPSON ET AL.

Decided, 1913.

*Wills—Power of a Widow to Sell Limited to Her Needs—Distribution of the Vested Remainder, where Devises Are Made in Succession to Various Persons and Objects.*

1. The estate devised by the testator to his widow in this case, while it might under some circumstances amount to more than a life estate in value, is less than a life estate as that term is ordinarily understood, inasmuch as the broad power and discretion confided in her to sell and use, is subject to the limitation that the income if sufficient, and proceeds from sales if necessary, can be used only for her own comfort, convenience and benefit, and neither the income nor principal can be used in building up a separate estate, the legatees having a vested remainder in so much of the estate as remains unconsumed at the death of the widow.
2. Lines drawn through the clause of a will, by express direction of the testator, for the purpose of cancelling such clause, and done before the same is signed, render such clause ineffective, and it is no part of the will of the testator.
3. A board of education is authorized to accept a bequest to be used in the erection and maintenance of a building to be used jointly for a public library and Young Men's Christian Association.

MATTHIAS, J.

On July 4th, 1912, L. N. Blume died, leaving Harriet C. Blume, his widow, his sole heir at law. His estate, at the time of his death, was valued at approximately $125,000 above indebtedness.

On December 7th, 1911, he had executed a will, which was duly admitted to probate, in the first item of which he expresses a desire for the prompt payment of his debts and funeral expenses. By item second he gives and devises to his wife, Harriet C. Blume, lot No. 18, situated in the village of Wapakoneta, county of Auglaize and state of Ohio, "to be hers absolutely and in fee simple."

Item three thereof is as follows:

"I give, bequeath and devise to my beloved wife, Harriet C. Blume, all the remainder of my property, both real and personal, of whatsoever kind and wheresoever situated, which I may own or have the right to dispose of at my death stated, with the understanding that she, my said wife, shall have the right to use, sell or dispose of, except as hereinafter stated, any or all of said property, real or personal, for her own comfort, convenience or benefit in any manner she may see fit during her lifetime."

The fourth item of said will provides that, "out of the property remaining at the death of my said wife I give and bequeath the following amounts respectively to the following named persons in the order named, to-wit:" Here follows a list of bequests to a number of individuals named, including therein the following clause: "To Harriet, Wesley, Lewis B. and Ethel King, the four children of Harriet King (a widow), formerly intermarried with Frederick Sallava, my wife's brother, the sum of two hundred and fifty ($250) dollars each." Item fifth is, "I next give and bequeath the sum of five hundred dollars ($500) to each of the following named churches in Wapakoneta," and six churches are there named. Item sixth is, "I next give and bequeath the sum of five hundred dollars ($500) to each of the following named lodges in Wapakoneta," naming six fraternal orders, and then provides: "said sum to be paid to the proper trustees or officials of each of said societies."

Item seventh of said will is as follows:

"Provided there are sufficient funds left out of my estate after the payment of the bequests, legacies and devises made in this will, I next give and bequeath to the board of education of the school district of Wapakoneta, Ohio, the sum of fifty thousand dollars ($50,000) or such other less sum as may be left for the purpose, for the purchase of the necessary land erection of a building and maintenance of same for a combined Public Library and Young Men's Christian Association building, to be called the 'Blume Library and Y. M. C. A.,' for the use and benefit of all the people and citizens of Wapakoneta and vicinity, the same to be in charge of and under the con-

trol of said board of education. All the above gifts and bequests are to take effect at the death of my said wife and are to be paid out of the property then remaining at her death, unless my said wife chooses to carry out any of said bequests before her decease.''

The remaining portions of said will, copied in full, are as follows:

''Eighth. I request and suggest to my said wife that as soon as convenient for my wife after my death that she, my said wife, shall pay over to the First National Bank, of Wapakoneta, Ohio, the sum of forty thousand dollars ($40,000) in cash, stocks or bonds, acceptable to said bank, but only upon the condition and provided that the acceptance of the same be acted upon by the board of directors of said bank by resolution that said bank shall pay to my wife as long as she lives four (4) per cent. interest on said sum of $40,000, payable semi-annually, and at the death of my said wife said sum of $40,000 shall become absolutely the property of said bank; the carrying out of this eighth clause of my will and the payment of said sum of $40,000 to said First National Bank of Wapakoneta, shall be entirely discretionary with and at the option of my said wife, and if she does not desire nor care for any reason to pay over said sum of $40,000 to said First National Bank, then it shall not be obligatory upon her to do so and this clause shall be null and void.''

''Ninth. All the residue of my property, real or personal, still remaining at the death of my said wife and after the payment of above gifts and bequests, I desire shall go to and be divided between my lawful heirs, according to law, with the understanding that heirs of the half blood shall count and be considered the same as heirs of the whole blood, and provided further that Charles J. Thompson, my wife's nephew, shall receive a share of said residue of my estate the same as if he were a full and lawful heir, viz: The same share as my half sisters and half brothers; and except that my sister, Harriet C. South and her three sons, Rufus B. South, Arthur L. South, and Dwight D. South, my nephews, shall receive no share of said residue nor any part of my estate whatsoever. I nominate and appoint Harriet C. Blume, my wife, to be sole Executrix of this Will and request that she be not required to give bond and that no inventory or appraisement be made of my estate.''

On May 11th, 1912, testator executed a codicil to said will, which is as follows:

"I, L. N. Blume, of Wapakoneta, Ohio, do make, publish and declare this to be my codicil to my last will above set forth, I hereby revoke and annul the bequest of $500 made to the Catholic Church of Wapakoneta, Ohio, as set forth in item fifth of my will, having recently executed and delivered two notes for $500 each, payable to Wm. Russ of said Catholic Church, not yet due, which said note shall be in lieu of the $500 bequest to the other churches. I hereby ratify and confirm my said Will in all other respects."

Under favor of Section 10857 of the General Code, Harriet C. Blume, as executrix of said will, brings this action, and asks the direction and judgment of the court upon all of the provisions of said will that are in anywise ambiguous or uncertain, and that said will be so construed that plaintiff may be guided and instructed by the decree of the court as to the meaning, application and effect of the various provisions of said will, and that she be given such direction as is necessary to properly administer the trust imposed upon her by the terms of said will.

Said Harriet Blume, as the widow of L. N. Blume, under favor of Section 10567 of the General Code, has also filed an answer, in which she also asks such a construction of the terms of said will as is necessary to advise her of her rights thereunder so that she may be thus aided in making her election whether to accept the provisions of said will or take distributive share of said estate under provision of the law.

The first question which arises, and the first particular in which we find it necessary to construe and determine the meaning of said will, is with reference to the quality and quantity of the estate devised and bequeathed to said Harriet C. Blume. This question is foremost because the determination of others depends somewhat upon the conclusion reached with reference to this one.

Before taking up these various portions of this will, in what seems to us the most logical order, we deem it well to first indulge in some generalization with reference to the rules that

must govern in the construction of wills. By "construction," as here used, is meant the ascertaining and determining of the testator's intention as expressed in this will. As well suggested by Page, Section 460, courts are careful to discover and enforce the testator's intention, but can not make a new will for the testator, and it therefore follows that they constantly refuse to ascertain the testator's intention except from the words which he used in his will, together with such extrinsic evidence as is admissible. Hence, the question which the court must have constantly in mind is not what should the testator have meant to do, or what words he meant to use, but, rather, what did he mean by the words which he has actually used. Rules of construction adopted and followed are of value only for the purpose of ascertaining the intention of the testator. As stated by Chief Justice Marshall, in the case of *Findlay* v. *King*, 28 U. S., 345:

"The intent of the testator is the cardinal rule in the construction of wills, and, if that intent can be clearly conceived, and is not contrary to some positive rule of law, it must prevail."

In this connection we quote further from *Page on Wills*, Section 461:

"Assuming, as we must, in a case of construction that the testator had testamentary capacity at the time of making the will, that he was under no restraint, and the will as made is in full compliance with the rules of law on the subject, the sole question for the consideration of a court for construction is, what testator meant by the provisions of the will which he has seen fit to make. This proposition has been put by the courts in such a variety of forms, and with such uniformity of view, that it is hackneyed."

It is also fundamental that the intention of the testator is to be ascertained from consideration of his will as a whole, and not from its disjointed fragments, and all parts of the instrument must be construed in relation to each other, so as to give meaning and effect to every clause and phrase. Hence, if two constructions are possible to a clause of a will, one of which is in harmony with the provisions of the remainder of

the will, and the other of which is at variance with them, the court will assume that the correct construction is the one which will harmonize this clause with the rest of the will. The will is to be construed as an entirety, and if possible all provisions reached rendered consistent with each other. It is fundamental also that an obvious general intent gathered from the whole will is rarely to be defeated by an inaccuracy or inconsistency in the expression of a particular intent. These propositions that are to govern in the construction of wills are unquestioned, and we state them, rather restate them, so that we may all have them clearly in mind as we take up for examination and construction the will before us.

Usually so-called precedents are of little value in the construction of a will, for the reason that wills vary so greatly in their terms, and a conclusion as to one may be, usually is, of but little, if any, service in the construction of another. As once said by Judge Story, ''the analogies afforded by precedents are helpful servants but dangerous masters.'' However, we find much aid in the decisions of the court of last resort of this state in the consideration of the nature of the estate taken by the widow under this will. But we shall not undertake in this decision an analysis of each of the decisions in Ohio which is applicable, nor attempt a comparison of each of them with the case at bar.

The language used by the testator in the early case of *Bishop* v. *Remple,* 11 O. S., 277, is distinguished from that used by testator Blume in that there was no limitation whatever upon the right or authority of the wife to sell any portion of said estate; no limitation whatever upon the use to which said property or the proceeds thereof might be applied. Hence, in that case the court held that the widow had an absolute right to sell and convey. In the subsequent case of *Pruden* v. *Pruden,* 14 O. S., 251, the testator used language in effect much the same as that used in the previous case cited, except that there was a limitation imposed by the words ''for her benefit and support.'' The court there held that the declared purpose of the testator was to provide for the support of his widow. The court say:

''We are lead to the conclusion that the will does charge upon the entire property the support of the widow and that she is entitled to use either principal or interest or both so far as may be necessary for this purpose; and that the heirs have a valid estate in remainder to what may be left when this object has been accomplished.''

The decision of the court in *Baxter* v. *Boyer et al*, 19 O. S., 490, is helpful in the consideration of the will before us, but the use and enjoyment of the estate there was unrestricted.

In the case of *Huston* v. *Craighead*, 23 O. S., 198, the court was called upon to construe a will in which, subject to the payment of his debts and certain legacies, the testator devised and bequeathed to his wife all his property, to be held by her during her natural life, provided she lived a widow; and declared it to be his will that she should have the entire management of his estate, and that she might sell and dispose of it whenever and in such manner as she might ''think best for herself and heirs;'' and provided that at the death of his wife whatever might be left of his estate, after payment of the legacies and the debts of his widow, should be equally divided among his children, it was held that the will did not give to the wife an absolute right to the personal property of the testator nor a fee simple in his real estate, but gives her a life estate and life support, with power to manage, sell and dispose of the property in any manner, that in her judgment, will best promote her own welfare and benefit the estate; but she is not thereby authorized to dispose of the property by giving it to some of the children of the testator. The Supreme Court, in that decision, say (page 208):

''It is evident that the testator intended to confer upon his wife ample power to obtain a support from his estate, and had such confidence in her that he was willing to empower her to manage, sell and dispose of his estate in any manner that in her judgment would promote her own welfare and best subserve the interests of the estate. Within the limits of the power thus conferred her discretion is conclusive.''

We refer to the language of the court in deciding the case of *Posegate* v. *South et al,* 46 O. S., 391:

"The bequest contained in the second item of the will is absolute and, unaffected by any other provision of the will, would vest in the widow, the unqualified ownership of the property bequeathed to her. If it be conceded, that the third item, which, at her death, gives the personal estate, or so much thereof as shall be unconsumed to the testator's children, so qualifies the previous bequest, as to reduce the estate given by it to the widow, to one for life, it must also be admitted, that it is a life estate with the right to the possession, use, enjoyment and consumption of the property by her without restriction, either upon the mode of its use and enjoyment, or the extent of its consumption; for, it is only so much as shall remain unconsumed at the death of the widow that is given over to the children and no limitation is found in the will, upon the nature of the use to which she may subject the property, and her power to consume it is uncontrolled. Such right of use, enjoyment and consumption, necessarily implies the right to the possession of the property, since, without its possession, it could neither be used, enjoyed or consumed. The duty of the executor, under the will, therefore, was, after the payment of the debts and funreal expenses of the testator, to deliver possession of the personal estate of the widow."

The discussion of the court in the case of *Minyoung* v. *Minyoung et al*, 47 O. S., 501, is also of considerable force and effect in the consideration of the will before us. There, as here, the testator devised and bequeathed to his wife, substantially all his property and authorized the use for her comfort and convenience all that, in her judgment, was necessary. The court there held that the widow took a life interest and a life support in the property with the right to control it and the principal and income so far as may be reasonably necessary for her own comfort and convenience, subject to the trust of supporting and educating her son, as required by the terms of the will, and that the children took an estate in remainder to what may be left when such object shall have been accomplished, vested in interest, though contingent as to amount.

The decision of the court in *Johnson* v. *Johnson*, 51 O. S., 446, is not only instructive, but we believe absolutely controlling in the disposition of the question we have before us in this case. There Judge Burket, who delivered the opinion, reviewed not

only the cases we have cited, but many others.   This decision aids us materially, not only in determining the estate devised and bequeathed to Mrs. Blume, by this will, but it also clearly points out that the legatees named in this will have a vested remainder in so much of the estate as may remain unconsumed by Mrs. Blume at her death.   The language used by the testator in the will before us as did that in the will there considered authorizes and requires that the widow be given full possession and power to use and dispose of said estate for her own support, and places upon her the duty which is in the nature of a trust to have due regard for the rights of those in remainder as to the part of the estate not consumed by her for her support.   Language used in the will there under consideration, much less clear in its terms of limitation than that used in the will before us, was held by the court to show the plain intention of the testator that the property was "given to the widow to be by her used and consumed, and that while so using and consuming the same she is empowered to bargain, sell, convey, exchange or dispose of the same as she may think proper, limited, however, in the exercise of such power to the purpose for which the property is given to her, that is, for her consumption."

That the estate taken by Mrs. Blume can not be more than a life estate with power to sell and dispose of any and all of such estate, but only for the purpose stated, we think is settled by the unbroken line of authorities, not only in this state but elsewhere.

In the case of *Home* v. *Lippardt,* 70 O. S., 261, the court clearly states the rule applicable here to be, "That when an estate is devised with an absolute power of disposal a devise over of what may remain is void, but that where a life estate only is given in express words to the first taker, with an express power in a certain event, or for a certain purpose, to dispose of the property, the life estate is not by such a power, enlarged to a fee or absolute right, and the devise over is good."

In this decision Judge Summers has collected and revised many decisions from which the rule thus stated is so clearly deduced.

Because we believe it especially applicable in the consideration of item three of this will, we quote the following from one of the decisions cited by Judge Summers, that of *Stuart* v. *Walker*, 72 Me., 148:

"Where the power of disposal is not an absolute power, but a qualified one, conditioned upon some certain event or purpose, and there is a remainder or devise over, then the words last used do restrict and limit the words first used, and have the force and efficacy to reduce what was apparently an estate in fee to an estate for life only. Thus: A gives an estate to B with the right to dispose of as much of it, in his life time, as he may need for his support, and if anything remains unexpended at B's death, the balance to go to C. Here there may be something to go over. B is to dispose of the estate only for certain specified purposes. He can defeat the remainder only by an execution of the power."

It is further shown in this decision that where the life estate is expressly created instead of arising by implication, absolute control does not amount to absolute ownership, and unqualified power of disposal does not enlarge the estate to a fee. This proposition is concisely stated by Page, Section 576.

What then does Mrs. Blume receive by virtue of item three of this will, and what duties and obligations are imposed upon her thereby? We think the intention of the testator is clearly shown to be that, not only the use of the income from his property shall go to Mrs. Blume, but that all his property shall go to her with this limitation, that she may use the income and also consume any portion of the estate, but only so far as necessary for her own comfort, convenience or benefit. We regard this provision for Mrs. Blume as less than a life estate, although it may be more than a life estate in value because of the power conferred upon her to sell and use any or all of the estate for her comfort, convenience or benefit; but it is less than a life estate in that she is not authorized to use any portion of it, not even the income therefrom, for any purpose other than that named in the will.

The fore part of item three clearly gives to Mrs. Blume a life estate in all the property of the testator, except lot 18, which

he had theretofore given to her absolutely, but the latter part of said item, while conferring power upon Mrs. Blume to sell and dispose of said estate, limits the use, not only of the principal, but of the income as well to the purpose therein stated, that is, "for her own comfort, convenience or benefit." After stating that Mrs. Blume shall have said property during her natural life only, such provision is qualified by limiting the use thereof, and consequently the income therefrom to the purpose therein expressly named. The same limitation is placed upon the use as upon the purpose for which sale may be made. This is an instance where "the words last used to restrict and limit the words first used," and it must be found, from a consideration of this entire will, that it was the intention of the testator that his estate, the income if sufficient, but the principal if necessary, should be used by Mrs. Blume "for her *own* comfort, convenience and benefit," but the use to which either the income or principal may be applied is to be limited to such purpose. It follows then that Mrs. Blume, under the terms of this will, would not be entitled absolutely to the income from this estate, but only so much thereof as would be necessary for her own comfort, convenience and benefit, and if that were not sufficient for such purpose she could use any portion of the body of the estate necessary therefor. She could not use the income to build up a separate estate. Such conclusion must be declared from a consideration of the entire will.

The power of use and sale conferred in the will considered by the court in the case of *Houston* v. *Craighead*, 23 O. S., 198, was much broader than in this will. Neither is such unlimited power conferred here as by the will construed by the court in the case of *Posegate* v. *South*, 46 O. S., 391, the use given of the estate there was unlimited and unrestricted while here the right to use as well as the purpose of sale, is limited to "her own comfort, convenience and benefit." The same observation could be made of the will construed in *Baxter* v. *Bowyer*, 19 O. S., 490.

While the estate devised to Mrs. Blume is thus limited, the power vested in her is broad and the discretion confined to her is unlimited as to the manner of use, sale or disposition of

said property, so long as it is necessary for her own comfort, convenience or benefit.

Here arises the duty devolving upon her as a trustee of said fund for those in remainder, for that such is her relationship to the legatees named in this will, we think there can be no question. The rule stated in *Johnson* v. *Johnson*, 51 O. S., 446, clearly applies, and while she can "use and enjoy the estate to its fullest extent for her support, and consume the whole of it if necessary, she could not go beyond what would be regarded as good faith toward the remainderman."

At this point we should probably give consideration to the question raised by counsel for the defendants as to the meaning of the clause twice used in item three, "except as hereinafter stated." We can not acquiesce in the suggestion made that it was the purpose of the testator to have set aside a fund sufficient to meet the legacies named in items four, five, six and seven, of this will, and the same "held separate and apart to be kept intact and sacred for the purposes of paying the same to these respective parties." In our opinion the language of the entire will can not be so construed. The one de-desire testator does make plain is that his entire estate shall be held to meet the necessities of his wife, and all bequests are subordinate to the provision for her, and are to be paid out of what remains after she is cared for, and can not be paid until after her death except so far as she chooses to pay them. The clause referred to need not and should not be given any consideration whatever if in subsequent portions of the will no exception is made to which said clause may have reference. Such exception or limitation can not apply to the bequest named in the fourth item, for that immediately follows the item in which such clause is used and there not only the time, but the limitation or payment of those bequests is emphasized by testator, by stating at the very beginning of the item making such bequests, "out of the property remaining at the death of my first wife, to the following named persons in the order named." The first, "except as hereinafter stated" may, and probably does mean, that while she has all of said property

during her natural life only, yet that she is free to dispose of
any of it in any manner she sees fit, it for the purpose stated,
and thus by this clause her right of use is expanded rather than
limited. The same clause repeated after giving authority to
use, sell or dispose of, seems to contemplate the making of
such a limitation later in the will. We have seen that there
is no such limitation in item four. Neither is there in item
fifth, for the bequests named in item fourth are to be paid out
of property remaining at the death of the wife, and the be-
quests named in item five are inferior to those named in item
four, for the testator says, "I next give and bequeath," and
the bequests named in item five are such that neither takes
precedence over the other. Neither is there any such limita-
tion specified in item six, for those are given and bequeathed
"next," meaning after the payment of the bequests named in
item five. Certainly such limitation is not made in item seven,
for that provision is contingent upon the sufficiency of said
estate to meet it "after the payment of the bequests, legacies
and devises made in this will." That no such limitation had
been made anywhere in said will up to the eighth item, as it
seems the testator contemplated in the beginning of said will
he would subsequently state, is settled beyond dispute by the
language used in the latter part of item seven, "All the above
gifts and bequests are to take effect at the death of my said wife
and are to be paid out of the property then remaining at her
death, unless my said wife chooses to carry out any of said be-
quests before her decease." No such exception is stated in
either item eight, nine or ten. It seems plain that if the tes-
tator contemplated, at the beginning of the preparation of his
will, to make some exception as to the use or disposition of his
property, he, upon further consideration, did not make or ex-
press such exception or limitation, other than that which may
appear in item ninth, so-called, which was canceled by having
lines drawn through it before the will was in fact executed.

The first statement of said clause in item three may have had
reference to the subsequent provision authorizing the wife to
pay any of the bequests named at any time she desired. No

such exception having been expressed by the testator whereby the right conferred upon the wife to possess and control all of said property during her lifetime is limited or abridged, it follows that the right of use and enjoyment, coupled with the power to sell and dispose of said property for the purposes stated in any manner she may see fit, "necessarily implies the right to the possession of the property, since, without its possession, it could neither be used, enjoyed or consumed." In this particular the rule laid down in *Posegate* v. *South et al,* 46 O. S., 391, applies, and after the payment of the debts and funeral expenses of the testator it will become the duty of the executrix to deliver possession of said property to Mrs. Blume, the widow, who will hold it in trust for the legatees named in said will, subject to her right to use so much of the estate as necessary "for her comfort, convenience and benefit."

Under the authorities we have cited the legatees named and referred to in said will have a valid estate in remainder to what may be left of said property referred to in item three, after the objects and purposes stated therein shall have been accomplished.

The next question presented arises in the consideration of item four, which contains a number of bequests, among them being one "to Harriet, Wesley, Lewis B. and Ethel King, the four children of Harriet King (a widow), formerly inter-married with Frederick Sallada, my wife's brother, the sum of $250." The evidence shows that there are but three children of Harriet King referred to, being Wesley, Lewis B. and Ethel; it further appears from the evidence that the relations of the testator with this family have been close, they having visited frequently and that he well knew the members of the family and that there were but three children, all of whom are grown, two being married. There is here a devise to Harriet King, and it is shown that there is but one Harriet King who could possibly have been intended and it must be concluded that probably, by error or misunderstanding of the scrivener, the word "four" instead of "three" was used. The names of the legatees are stated and each of the four named persons is entitled to the legacy bequeathed.

By the fifth item of said will the testator bequeaths five hundred dollars to each of the churches of Wapakoneta therein named, and directs that said sum be paid to the proper board of officials of each of said churches. By codicil heretofore stated the bequest of five hundred dollars to the Catholic church is specifically revoked and annulled. A question has arisen as to the effect of the codicil upon the bequest to the other churches named by reason of the language used by the testator for the evident purpose of stating his reason for revoking the bequest to the Catholic church. Following such revocation, "having recently executed and delivered two notes for five hundred dollars each payable to William Russ of said Catholic church, not yet due, which said note shall be in lieu of the five hundred dollar bequest to the other churches." There is no revocation of the bequest to the other churches specifically stated, and it can not be concluded that the phrase "in lieu of" as here used was meant to work a revocation of such bequest. We apply, in the consideration of this question, the rule stated in Section 462 of Page on Wills:

"Where a codicil is appended to a will and does not contain any clause of revocation, the provisions of the will are to be disturbed only as far as are absolutely necessary to give effect to the provisions of the codicil; and in other respects such a will and codicil are to be construed together."

Undoubtedly the testator not having revoked the bequest to the other churches, means by the language used in stating the reason for revoking the bequest to the Catholic church that while that church has been given the two notes instead of the bequest theretofore made, each of the other churches is to have the bequest theretofore made in behalf of each.

The amended petition sets out, with precision, the name of each of these churches, and also fixes clearly the identity of the lodges referred to in item six. We find that each of said churches named in item five, and more particularly described in the amended petition herein, excepting herefrom, of course, the Catholic church, is entitled to receive the bequest of five hundred dollars. We further find that each of said lodges

named in item six, and clearly identified in the amended petition herein, is entitled to the bequest of five hundred dollars.

The bequest to various churches should be paid at the time indicated in said will, payment to be made to the treasurer of each church upon acceptance of bequest by resolution of the board of trustees or council thereof as the case may be.

The bequest to each of said lodges named to be paid at the time indicated in said will, payment to be made to the treasurer or officer of each lodge having charge of its finances, upon acceptance of such bequest by resolution duly passed by the respective lodges.

Although our attention has been directed by counsel, in argument, to item eight of said will, and the suggestion made that the court should determine and state its construction, or, rather, its interpretation thereof, and state the rights of Mrs. Blume under this item if she take under the will and if she take under the law, it is not claimed by any of counsel that such item gives rise to any trust or amounts to more than a mere suggestion, that Mrs. Blume pay over forty thousand dollars in cash, stocks or bonds to the First National Bank of Wapakoneta, and that the bank pay her four per cent. interest thereon, and that upon her death said forty thousand dollars become absolutely the property of the bank; the testator then adds that such payment shall be entirely discretionary with and at the option of his wife and if for any reason she does not care to pay said sum to the bank, then it shall not be obligatory upon her to do so then this clause shall be null and void. Undoubtedly Mrs. Blume may exercise the option given and pay over said forty thousand dollars to the First National Bank in the manner and upon the terms stated in said item eight and said terms complied with the bank, said forty thousand dollars would become absolutely the property of the bank upon the death of Mrs. Blume. However, the interest paid her by the bank could not be used in any other manner than that which we have announced heretofore, that is, only so far as necessary for comfort, convenience and benefit. The nature of this provision is such that the bank has no vested interest whatever in said estate, unless Mrs. Blume elects to pay over said forty thou-

sand dollars to the bank in the manner specified in said item eight.

It was suggested by counsel that the court show how Mrs. Blume may best indicate her purpose with respect to the suggestions made in said item. Her purpose in this matter ought to be in some manner determined and announced. We know of no better way to suggest that this be done than by giving a written motive of her conclusion with reference to this matter to the bank, and filing a copy thereof in the proceeding now pending in the probate court.

In this connection perhaps we should consider also the latter part of item seven of said will, and determine its effect. We are clearly of the opinion that said clause is not limited to the provisions of the seventh item of said will, but has reference to all of the gifts and bequests named in said will preceding such clause, and that none of the gifts and bequests named in said will preceding the eighth item do take effect until the death of Mrs. Blume, and that they are to be paid out of the property remaining at her death, but Mrs. Blume, whom we have found is entitled to the possession of all of said estate after the payment of the debts, may carry out any of said bequests before her decease. Unlimited authority is given, and unhampered discretion is confided to her to consummate any of the gifts and bequests named in said will preceding item seven at any time. Said clause refers rather to what precedes item seven for that bequest is contingent upon the sufficiency of the estate to pay the preceding "bequests, legacies and devises."

Hence, if she pay them, she may determine the order in which they shall be paid. She may pay none of them. She may pay all of them. If they are not paid by Mrs. Blume during her lifetime, then we think the purpose of the testator that all of the legacies named in item four shall be considered as a class to be paid before legacies named in any subsequent item, but that the full amount stated is to be paid to each in the order named, as indicated in the beginning of said item, and that they would not *pro rate* if the estate was not sufficient to pay off. After

the payment of the legacies named in item four those named in item five, as modified by the codicil,. would be paid, and if there was not enough of said estate to pay all, they would *pro rate*. If the estate remaining were sufficient to pay the bequests named in items four and five, the next paid would be those named in item six, and if said estate were not sufficient to pay all named in item six, that those would *pro rate,* no preference being given by the testator.

In another connection we have referred to a clause in said will preceding item ninth. The evidence shows that, by direction of the testator, the scrivener drew lines across the same for the purpose of cancelling and revoking that clause before the will was signed, and it appeared also before the remaining portions of the will were written, for that clause was numbered ''ninth,'' and the item which follows it, as the will was executed, is also numbered ''ninth.'' Therefore, no force or effect should be given to said clause.

This brings us to a consideration of the seventh item of said will. The plaintiff asks the court to determine whether the benefaction named therein is a lawful one and whether the board of education of the school district of Wapakoneta, Ohio, may receive any money for the purpose named in said item seven.

It is urged that while a board of education may take and hold, in trust, and devise, bequest or donation, such taking and holding is limited to the use and benefit of such district, and that they may exercise such powers and privileges as are conferred by the laws relating to the public schools of the state. This is the provision of Section 4749 of the General Code, but Sections 7631 to 7642 contain provisions conferring much greater authority than the bequest here in question. Section 7631 provides that:

''The board of education of any city, village, township or special school district, by resolution, may provide for the establishment, control and maintenance, in such district, of a public library, free to all the inhabitants thereof. For that purpose, by purchase, it may acquire the necessary real property, and erect thereon a library building; acquire, by purchase or otherwise, from any other library association, its library prop-

erty; receive donations and bequests of money or property for such library purposes and maintain and support libraries now in existence and control by the board.''

Section 7632 authorizes a levy of not to exceed one mill for library fund, to be expended by the board for the establishment, support and maintenance of such public library.

There can be no question then as to the authority of the board of education of the school district including Wapakoneta to receive a bequest and use the same for library purposes. The question then arises whether such bequest shall fail because of the provision in said item seven that such building shall be maintained for a public library for Young Men's Christian Association building. Trusts created by gift in the interest or promotion of education are universally recognized as charitable, and are to be liberally construed and operated to the end that the intention of the donor may be carried out as near as can be done under all the circumstances. They are highly favored by the law and should receive such construction as would tend to preserve rather than to destroy them. *Pomeroy's Equity Jurisprudence*, Section 1023; *Trustees McIntire* v. *Zanesville Mfg. Co. et al*, 9 Ohio, 203; *Zanesville Mfg. Co.* v. *Zanesville*, 20 Ohio, 483; *Miller* v. *Teachout*, 24 O. S., 525; *Bd. of Education* v. *Ladd, Admr.*, 26 O. S., 210.

Among the charitable trusts most liberally construed, have been those created for the promotion of religion and education. *Sowers* v. *Cyrenius*, 39 O. S., 29; *Rockwell et al* v. *Blaney et al*, 9 N.P.(N.S.), 495, and cases there cited.

Surely then unless this trust is impossible of execution, it should not be permitted to lapse. It is held in *State, ex rel Atty.-Gen.*, v. *City of Toledo*, 3 C.C.(N.S.), 468, that ''Although such power is not expressly conferred a municipality has authority to receive property in trust for educational and other purposes beneficial to its inhabitants.'' It does not appear to us that this trust is impossible of execution by the trustee named; if it were, rather than permit the trust to fail, we think the rule would apply which would authorize a court of equity to appoint a trustee. The exercise of the powers conferred by

the trust we do not believe inconsistent with duties imposed upon boards of education. By the law of the state Young Men's Christian Associations seem to be regarded as belonging to the class known as "charities," and are authorized to accept legacies, devises and bequests. They therefore can not be regarded as incompatible. It is to be observed, too, that this bequest to the board of education is "for the purchase of the necessary land, erection of a building and maintenance of same, for a combined public library and Young Men's Christian Association building, to be called the 'Blume Library and Y. M. C. A.,' for the use and benefit of all the people and citizens of Wapakoneta and vicinity, the same to be in charge of, and under the control of said board of education." The board is authorized to use this bequest for the purchase of land and the erection and maintenance of a building thereon, which building is to be in charge of and under the control of said board. The bequest is not made for the maintenance of a library or the management or maintenance of a Y. M. C. A., but rather to provide and maintain a building, in so far as the funds will serve that purpose, which building is to be given the name specified.

It is our opinion that the authority of the board of education is ample to receive this bequest and execute the trust which it carries.

Consonant with the letter and spirit of Sections 10857 and 10567, General Code, we have endeavored to definitely determine and clearly state the rights of the parties and organizations named or referred to in this will, and particularly to advise the executrix as to her duties and the widow as to her rights under said will.

A journal entry should be prepared in accordance with these conclusions, the costs of this proceeding to be paid out of the funds of the estate.